FOSTER & CO. *v.* UNITED STATES (No. 2210).[1]

1. RELATIVE SPECIFICITY.

The provision of paragraph 303, tariff act of 1913, for rugs composed in part of wool and not specially provided for can not claim rugs which are also similar rugs to oriental rugs under paragraph 300.

2. JAPANESE CATTLE-HAIR RUGS.

Handmade and hand-tufted Japanese rugs, the predominant material and component material of chief value being cattle hair, with a backing or warp of jute and some wool in the nap, having designs similar to those of Chinese oriental rugs, were classified by the collector under paragraph 300, tariff act of 1913, as being similar to oriental rugs. The protest claimed classification under paragraph 303 as rugs composed in part of wool and not specially provided for. The evidence is not sufficient to overcome the presumed correctness of the collector's decision, and the decision of the Board of United States General Appraisers overruling the protest is affirmed.

[1] T. D. 39681.

United States Court of Customs Appeals, June 1, 1923.

Appeal from Board of United States General Appraisers, Abstract 45161.

[Affirmed.]

*Allan.R. Brown* for appellants.

*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence* and *Harry M. Farrell,* special attorneys, of counsel), for the United States.

[Oral argument May 9, 1923, by Mr. Brown and Mr. Lawrence.]

Before Martin, Presiding Judge, and Smith, Barber, Bland, and Hatfield, Associate Judges.

Barber, Judge, delivered the opinion of the court:

This case involves the classification of rugs made in Japan, of which the predominant as well as the component material of chief value is cattle hair. The backing or warp of the rugs is jute and there is some wool in the nap. They are handmade and hand-tufted. The collector classified them under paragraph 300 of the tariff act of 1913 which provides for carpets of every description woven whole for rooms, oriental, Berlin, Aubusson, Axminster, and similar rugs. A typical exhibit of the importation was introduced in evidence and is before us.

The importers' protest claimed classification under that part of paragraph 302 of the act which provides for carpets and carpetings of wool or cotton or composed in part of either of them not specially provided for by virtue of paragraph 303 which provides that mats and rugs for floors and other portions of carpet or carpeting composed wholly or in part of wool not specially provided for, shall be subjected to the rate of duty imposed on carpets or carpeting of like character or description.

The Board of General Appraisers overruled the protest, saying that while there was some slight testimony tending to show that the rugs were not of the ordinary class of oriental carpets, it was not in their opinion sufficient, in view of the fact that the rugs were handmade and hand-tufted and of oriental design, to overcome the presumption of correctness attaching to the collector's action. The importer appealed.

The evidence is rather meager. The importer was the only witness testifying in his behalf. He said in substance that his main business was the wholesaling of rugs, carpets, and linoleums, in which he had been engaged some 20 years; that he had not had very much experience in dealing in oriental rugs, but had a general knowledge thereof and had handled some, although it was not a main part of his business and he was not an expert at it; that the term "oriental rugs" was not used in the wholesale trade; that there were two kinds classed as oriental rugs coming from Persia and Turkey and also Chinese rugs made in China, being, in fact, an oriental rug but in trade termed a Chinese; that the wholesale dealers in this country when

they used the term "oriental rugs" referred to Persian, Turkish, and Chinese oriental rugs; that these were all hand tied and usually contained a linen back with wool tied in for the nap; that the rugs in question were imported in commercial stock sizes of different dimensions, and were not woven for any particular room; that he was not very familiar with Berlin rugs; that the rugs of the importation were not Berlin, Aubusson, or Axminster; that Chinese oriental rugs were distinguished from Persian rugs by the designs and weave; that the typical exhibit had a design similar to the Chinese designs; that the rugs of the importation were of far less value than oriental or Chinese rugs and cheaper than the better grade of machine-made Wilton rugs.

The examiner of merchandise at New York was the only witness introduced by the Government.    He said he advisorily classified rugs; that he was familiar with the various kinds of oriental rugs; that the determining characteristics thereof were the weave, the design, and the material.    He agreed with importer that these rugs were hand-tied and hand-tufted and said that the designs on the typical exhibit compared very favorably with the designs that were characteristic of Chinese oriental rugs.

There is no question that the rugs are handmade, that is, not woven on a loom, and they are hand-tufted. . It is not claimed that Chinese rugs are not within the term "oriental rugs" and the importer testifies they are such in fact.    There is no dispute that these rugs are similar in design to Chinese oriental rugs.    The importer says they are and the Government's witness says they compare very favorably with the characteristic designs of such rugs, and we think, as did the Board of General Appraisers, that on the record the action of the collector must be sustained.

We do not overlook the importers' contention that these rugs being composed in part of wool should take assessment under paragraph 302 by virtue of paragraph 303, but the latter paragraph relates, among other things, to rugs in part of wool not specially provided for, but under the evidence here these rugs seem to be specially provided for in paragraph 300 as similar to what is conceded to be an oriental rug, namely, a Chinese oriental rug.

It is unnecessary to enter into an exhaustive discussion of the meaning of the term "similar rugs" employed in paragraph 300 in comparison with the similitude provision of the statute.    Congress evidently meant to give some force to the term; otherwise it would have relied upon the applicability of the similitude paragraph provisions, and we think for the purposes of this case that it must be held that the evidence tends to support rather than to overthrow the collector's classification.

The judgment of the Board of General Appraisers is *affirmed*.

SMITH, Judge, concurs in the result.