(C. D. 1031)

AMERICAN OVERSEAS CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 24, 1946)

*Benjamin A. Levett* (*Meyer Ohlbaum* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard H. Welsh* and *Herbert M. Rosenberg*, special attorneys), for the defendant.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

LAWRENCE, Judge: Plaintiff seeks to recover allegedly excessive duties imposed by the collector of customs at the port of New York on an importation consisting of sets of drawing instruments. The articles were classified for duty at the rate of 45 per centum ad valorem under the provision in paragraph 360 of the Tariff Act of 1930 for "drawing instruments, and parts thereof, wholly or in chief value of metal." Plaintiff contends that the assessment properly applicable to this importation is at the rate of 20 per centum ad valorem under the concluding provision in the following paragraph of said act:

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

The basis of plaintiff's claim is that the imported articles are *sets* of drawing instruments, appropriately packed and customarily sold as such; that they are entireties and therefore are not comprehended by the provision in paragraph 360, *supra,* for "drawing instruments"; and that not being more particularly described elsewhere in the tariff act, they are classifiable under the concluding provision in paragraph 1558, *supra.* Otherwise stated, it is claimed that a "set of drawing instruments" is a separate and distinct article of commerce, distinguishable from any of its constituent drawing instruments, and that a statutory provision for the latter does not encompass the former.

At the trial, plaintiff's counsel conceded that each instrument in the imported sets is a drawing instrument of a type which may be purchased singly and so used. This concession is harmonious with the other uncontradicted evidence in the case.

The witness called by plaintiff stated that the articles before us, represented by exhibit A, consist of sets of drawing instruments, that they are so bought and sold; and that the individual instruments are never taken from the cases and offered for sale separately. A leaflet and catalog introduced in evidence through defendant's witnesses substantiate this testimony, since they show that sets similar to those here in controversy are offered for sale as such, complete with case. The same individual instruments are also separately advertised for sale and sold, but the total list price of the individual items is substantially higher than the cost of the same articles sold as a set. For example, exhibit B advertises a "Professional Drawing Set" list price, $18. The total list price of its separate components, purchased singly, is $24.45. None of this evidence is disputed. Hence, we experience no difficulty in finding that plaintiff has established that the imported sets are known and sold as "sets of drawing instruments." It is equally clear that the sets are composed of individual articles which may be bought singly by their respective names.

The legal question before us is whether such sets are excluded from the statutory designation of "drawing instruments" in paragraph 360, *supra.* A subsidiary inquiry is whether the sets are entireties in a tariff sense.

Plaintiff claims support for the affirmative of these questions in *United States* v. *Dieckerhoff, Raffloer & Co.,* 160 Fed. 449, T. D. 28716. That case may be pertinent, but it does not necessarily favor plaintiff. The articles there before the court were books or cases of paper which, when opened, disclosed a succession of flat pockets with flaps in which needles of different sizes were neatly arranged to make

them more readily convenient for use. The collector assessed duty based on the aggregate value of the needles and cases on the theory that they were entireties and as such dutiable under the general provision in paragraph 193 of the Tariff Act of 1897 for "articles or wares not specially provided for in this act, composed wholly or in part of iron, steel * * * or other metal." The importer there asserted that the needles alone were the imported articles in the tariff sense, the cases being merely the usual coverings, and that the needles were entitled to free entry under the *eo nomine* provision therefor in paragraph 620 of the same tariff act. The Board of General Appraisers (now this court) affirmed the classification of the collector (T. D. 26887, G. A. 6220). That judgment was reversed by the Circuit Court, Southern District of New York, in *Dieckerhoff, Raffloer & Co.* v. *United States,* 151 Fed. 957, T. D. 27949. On further appeal to the Circuit Court of Appeals, Second Circuit, in *United States* v. *Dieckerhoff, Raffloer & Co.,* supra, that tribunal, speaking through Lacombe, Circuit Judge, while constrained to affirm the judgment appealed from, said:

* * * The case itself is composed of paper, and the suggestion that, when needles are stored in it, it becomes an article composed in part of metal, seems about as reasonable as would be the proposition that a square pasteboard box becomes an article composed in part of rubber when it is filled with rubber bands. It would seem that these cases are properly dutiable under paragraph 407 as manufactures of paper, not specially provided for (unless they are covered by some other clause in the paper schedule), while the needles which they hold are entitled to free entry; but we cannot direct such a disposition of the case at bar, because the importers did not raise this point in their protest and have not appealed from the decision of the Circuit Court. It is sufficient now to decide that the government is not entitled to a reversal on the theory that case and contents together constitute an "article composed in part of metal."

Commenting on the opinion from which the above quotation is an extract, counsel for plaintiff, in his brief filed herein, says:

It should be stated that Judge Lacombe, although affirming the assessment of the merchandise as unenumerated manufactured articles, expressed the view by way of obiter that the cases and the needles might be separately classified, the needles entitled to free entry and the cases according to the component; but this observation does not apply to the present case for, as Judge Lacombe pointed out, the needlecases could be used as a receptacle for other needles after the user had worn out or lost the assortment of needles it originally held.

This obviously is not true as to the drawing sets. Here the instruments do not become "worn out or lost" and the case is not used for other articles. * * *

If, as counsel asserts, the view expressed by the court in the opinion under discussion was "*obiter*," there would seem to be no sound reason for his attempting to distinguish the facts there and here present. In this connection, we quote the following from "Words and Phrases":

"Dictum" is of two kinds, "obiter" and "judicial." "Obiter dictum" is an expression of opinion by the court or judge on a collateral question not directly involved or mere argument or illustration originating with him, while "judicial

dictum." is an expression of opinion on a question directly involved, argued by counsel, and deliberately passed on by the court, though not necessary to a decision. While neither is binding as a decision, judicial dictum is entitled to much greater weight than the other and should not be lightly disregarded. In re Chadwick's Will, 82 A. 918, 919, 80 N. J. Eq. 168.

We do not, of course, regard the language referred to by counsel for plaintiff, purporting to express the views of the court in *United States v. Dieckerhoff, supra,* as a binding precedent in the instant case, but we are persuaded by its impelling logic. The case does suggest that two or more articles separately described in the tariff act do not lose their identity for tariff purposes because they may be sold as a unit. In the present instance, several drawing instruments are selected to form a set, and as such they are packed in a case and sold at a unit price. But that circumstance does not change the intrinsic character and nature of the articles. They are still drawing instruments, and the *eo nomine* provision therefor in paragraph 360, *supra,* is not conditioned upon the manner in which they are selected, packed, or priced.

In *Albert Westpfal v. United States,* 50 Treas. Dec. 320, T. D. 41806, this court had before it the question of the tariff status of certain leather sheaths containing three pairs of scissors. The facts stated below appear from the opinion of the court in that case. The collector classified the importation as scissors ·under the *eo nomine* provision therefor in paragraph 357 of the Tariff Act of 1922. The importer invoked the provision in paragraph 1432 of said act for—

Bags, baskets * * * and other boxes and cases not jewelry, wholly or in chief value of leather * * * any of the foregoing permanently fitted and furnished with traveling * * * sewing, manicure, or similar sets * * *

The articles were invoiced as "50 doz. sciss. cases," a description now mentioned only because one of the ·contentions there sought to be established was that the articles were commercially known as "scissors sets." The sample there in evidence consisted of a leather sheath which, when closed, measured 6 inches in length, 2⅛ inches in width at the top or widest point, and tapered to about one-half inch at the bottom. The flap at the top was about 3 inches long and had a snap fastener for closing. Small pieces of pasteboard or cardboard partly covered with plush were inserted inside and about the center of the sheath to keep each pair of scissors in place in the sheath. The scissors were in two sizes, one pair measuring 3½ inches, and the other two, 4 inches in length, the smaller size being known as "pocket" scissors and the other two as "embroidery" and "buttonhole" scissors, respectively. The evidence disclosed (1) that the merchandise was sold in its imported condition, and (2) that it was commercially dealt in as scissors in cases. These facts, the court held, did not establish that the articles were likewise known and recognized in trade as "traveling cases" or as "traveling sets," ·proof of which would be

necessary to warrant classification under said paragraph 1432. The court made this observation:

\* \* \* Merely because the scissors are reasonably small in size and when in the sheath make a compact and convenient article that might be used by a traveler, it does not follow that they are so used. \* \*. \*

adding that—

\* \* \* the mere act of placing them in a leather case does not ipso facto make three pairs of scissors dutiable as a traveling case \* \* \*

and that—

\* \* \* Ordinarily, pocket scissors encased in a sheath and carried in the pocket would pay duty as scissors, the same as a pocketknife similarly encased would pay duty as a pocketknife.

This further comment was made by the court:

Evidence that the articles are sold as scissors in cases does not necessarily prove that they are likewise commercially known and recognized as traveling sets. Because a pair of scissors may form a part of a sewing set is no reason for assuming that three scissors in a case must necessarily be a traveling set. It may well be that a razor should be regarded as an indispensable part of a traveling shaving set; but that does not mean that a set of razors, such as the well-known daily razor set, if contained in a leather case must be deemed a traveling shaving set. \* \* \*

Plaintiff moved for a rehearing in that case which was granted, and the court, deciding the case a second time (*Albert Westpfal* v. *United States*, 52 Treas. Dec. 691, Abstract 4378), referred to its original decision (T. D. 41806, *supra*), and, as appears from the full opinion in the files of the court, said:

In our decision (T. D. 41806) overruling protest 81225–G we held that the evidence did not warrant a conclusion that the merchandise consisted of traveling cases within the common or commercial meaning of the term. That was the single claim alleged in that protest.

As a result of a rehearing granted plaintiff we are now asked to consider protest 81226–G and to determine if the same merchandise is or is not comprehended by the words "similar sets" in said paragraph 1432. Inasmuch as we regard the importation as dissimilar to the sets specifically mentioned in the paragraph, in that the present sets are comprised of scissors only, we are of the opinion that they have been properly excluded from the paragraph. Scissors are specially provided for *eo nomine* and that provision cannot be circumvented by importing the scissors in cases.

The court also pointed out that—

If the specific duty imposed on scissors may be evaded simply by placing three pairs in a leather sheath and calling the whole a scissors set, then what is to prevent similarly importing six, nine, twelve, or more pairs with a like result? Whatever argument could possibly be advanced for considering two or more *different* articles in a leather case as constituting a set within the meaning of the provision in paragraph 1432, we believe that the particular kinds of sets already specifically enumerated in the provision would preclude a claim of similarity where the leather case merely contains but one kind of article imported in assorted sizes or different

shapes, especially when the article is elsewhere *eo nomine* provided for. [Italics quoted.]

We therefore overrule the protests and hold the scissors and cases in question to be properly dutiable as separate entities, the scissors at the rate of 15 cents each and 45 per cent ad valorem under the *eo nomine* provision therefor in paragraph 357, and the leather cases at the rate of 30 per cent ad valorem under paragraph 1432 of said act as manufactures composed in chief value of leather. * * *

If, as in the *Westpfal* case, *supra*, scissors in leather sheaths were held properly classifiable as scissors rather than under a provision for "sewing, manicure, or similar sets," then with even greater force have the present drawing instruments in sets been correctly classified by the collector as "drawing instruments," and not as "articles manufactured * * * not specially provided for," as claimed by plaintiff, which, incidentally, is the only contention here relied upon.

What was said of the scissors in sheaths is equally true of these drawing instruments in sets. To hold that such instruments lose their tariff identity as such when packed in cases, would make it possible to render nugatory and ineffective the *eo nomine* provision for "drawing instruments." For example, who would be likely to pay duty at the rate of 45 per centum ad valorem under paragraph 360, *supra*, for drawing instruments imported separately, if he could legally bring them in in sets subject to duty at only 20 per centum ad valorem under said paragraph 1558? Surely, Congress never intended to permit any such circumvention of the law.

While the issue in the *Westpfal* case, *supra*, is not identical with that here presented, nevertheless, the reasoning and conclusion therein have an immediate and appropriate bearing upon the conclusion which we have reached in this case.

In his brief filed herein counsel for plaintiff makes this observation:

At the hearing counsel for the Government indicated he might argue that since the instruments are taken out of the case in which they are placed when a person wishes to use them, this use should govern the classification of the merchandise. We will readily agree that the instruments considered alone are drawing instruments. But such an argument would be a begging of the question since plaintiff's claim is based solely on the fact that they are not imported separately but as an *integral part* of a particular commodity considered in the trade and in common use as an entirety. [Italics supplied.]

In *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851, our appellate court said:

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article*. *Welte & Sons* v. *United States*, 5 Ct. Cust. Appls. 164, T. D. 34249; *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T. D. 41673; *Peter J. Schweitzer, Inc.* v. *United States*, 16 Ct. Cust. Appls. 285, T. D. 42872, and case cited therein; *United States* v. *John Wanamaker*, 16 Ct. Cust. Appls. 548, T. D. 43266. [ Italics quoted.]

adding that—

The mere fact that two articles are designed and constructed to be used to-gether, does not necessarily make either a part of the other.   *Columbia Shipping Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 281, T. D. 39085; *United States* v. *Kalter Mercantile Co. et al.*, 11 Ct. Cust. Appls. 548, T. D. 39680.

Viewed from any angle, but especially in the light of the above judicial pronouncement, it is at once apparent that the drawing instruments in controversy are separate and distinct entities, complete in themselves, and capable of functioning as such without the addition thereto of any other article.   Indeed, this is conceded by plaintiff's counsel when he said:   "We will readily agree that the instruments considered alone are drawing instruments."

And equally erroneous, in our opinion, is plaintiff's contention that the imported sets must be treated for tariff purposes as entire-ties.   A similar claim was sustained by this court in *John Wanamaker, Philadelphia, Inc.* v. *United States*, 61 Treas. Dec. 1382, Abstract 18677, regarding women's leather handbags fitted with mirror, purse, and strap watch.   On appeal, however, in *United States* v. *John Wanamaker, Philadelphia, Inc.*, 20 C. C. P. A. (Customs) 367, T. D. 46132, that judgment was reversed, the appellate court saying:

Questions of entirety almost always present points of difficulty for adjudication, and this suit is no exception to that rule.   However, considering the nature of these articles, we feel constrained to differ with the trial court as to their being entireties for tariff purposes.   The completed article is obviously somewhat of a novelty, designed to meet, or perhaps to create, a fashion.   There is no natural affinity or relation between a leather hand bag and a watch.   Neither is normally essential to the completeness of the other.

\*     .     \*     \*     \*     \*     \*     \*     .

Here we have three distinct entities, to wit, a bag or pocketbook, in chief value of leather; watch movements; and watch case, for each of which *eo nomine* provision is made in separate paragraphs of the Tariff Act of 1930.

The fact that they were assembled into a unit and so imported has not caused any part to lose its identity or its normal use.

In that case, as pointed out in the decision of the appellate court, the exhibit showed that a small watch was attached at each of its ends to straps, which straps were in turn attached rather tightly to the sides of the bag.   It was further pointed out that the "watch fills what, without it or something similar in size, would be a gap in the strap"; and that in "a way the watch constitutes a part of or a link in the strap."   In the sets here imported the drawing instruments are not attached to the case.   The grooves in which they fit are merely to keep them in place in the case until the instruments are taken therefrom for use.

A similar question arose in *United States* v. *Saks & Co., Inc.*, 21 C. C. P. A. (Customs) 186, T. D. 46714, in which it was stipulated between counsel "that the watch was set in one corner of the bag on

the outside." In drawing this agreement to the attention of the court in that case, plaintiff's counsel pointed out that "Manifestly, if the watch were removed from the bag an open hole would remain in the bag and the bag would not be a salable article of commerce." Of such argument the court said:

Even if we were to hold, which we do not, that such method of construction would render the goods dutiable as an entirety, we think the stipulation hardly goes so far as counsel claim. The watches are "set in one corner of the bag, *on the outside.*" This is far from a stipulation that the watches extend entirely through the side of the bag. [Italics ours.]

The court referred to its earlier decision in the *Wanamaker* case, *supra*, and held that "No different construction is called for here."

In *Wm. Adams, Inc.* v. *United States*, 5 Cust. Ct. 239, C. D. 407, this court had before it metal trays, each containing five glass dishes, two metal spoons or servers, and two metal forks. With the exception of the forks, the remaining articles were classified under paragraph 339 of the Tariff Act of 1930 as household utensils plated with silver. The forks were classified as such under the *eo nomine* provision therefor in paragraph 355 of said act. Plaintiff claimed that all of the articles, including the forks, constituted an entirety, and as such were classifiable under said paragraph 339 as table or household utensils plated with silver. In holding the various articles to be classifiable as separate dutiable entities and not as entireties, this court said:

It has been well settled in customs law that to constitute an entirety for tariff purposes a combination of two or more articles must be so joined together or merged that the whole creates a new and distinct article with a new name and use. *Isaac* v. *Jonas*, 148 U. S. 648; *United States* v. *Auto Import Co.*, 168 Fed. 242; *Park & Tilford* v. *United States*, 1 Ct. Cust. Appls. 34, T. D. 31006; *Knauth* v. *United States*, 1 Ct. Cust. Appls. 422, T. D. 31499; *Jackson Co.* v. *United States*, 2 Ct. Cust. Appls. 475, T. D. 32227; *United States* v. *Haaker*, 4 Ct. Cust. Appls. 508, T. D. 33935; *Altman* v. *United States*, 13 Ct. Cust. Appls. 315, T. D. 41232; *Salemi & Sons* v. *United States*, 19 C. C. P. A. 43, T. D. 44892; *United States* v. *Miyaka*, 22 C. C. P. A. 38, T. D. 47039; *Yardley* v. *United States*, 22 C. C. P. A. 390, T. D. 47400; and *United States* v. *Woolworth*, 23 C. C. P. A. 365, T. D. 48212.

Where articles are designed to be used together but are separate, distinct, and complete in themselves, they are not to be regarded for tariff purposes as entireties, because they do not merge so as to form a new and distinct article of commerce having a different character and use, or because neither is essential to the completeness of the other or bears a natural affinity or relation one to the other. *Borgfeldt* v. *United States*, 11 Ct. Cust. Appls. 105, T. D. 38750; *United States* v. *Kalter*, 11 Ct. Cust. Appls. 540, T. D. 39680; *Lord & Taylor* v. *United States*, G. A. 6942, T. D. 30140, 18 Treas. Dec. 324; *Coty Processing Co., Inc.* v. *United States*, 23 C. C. P. A. 117, T. D. 47768; *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.*, 22 C. C. P. A. 281, T. D. 47330.

In view of the settled law upon the subject of entireties, and on the facts here presented, we see no merit in the claim alleged by plaintiff under paragraph 1558, *supra*, to the effect that the imported drawing instruments in sets are classifiable as "articles manufactured  *  *  *

not specially provided for," rather than under the *eo nomine* provision for "drawing instruments" in paragraph 360, *supra,* as classified by the collector. All claims of the plaintiff are therefore overruled and the decision of the collector is affirmed.

Judgment will be entered accordingly.