In the matter of the paper-writings purporting to be the last will and testament and codicil thereto of JULIA H. CHADWICK, deceased.

[Decided February 27th, 1912.]

1. *"Dictum"* is of two kinds, *"obiter"* and *"judicial."* *"Obiter dictum"* is an expression of opinion by the court or judge on a collateral question not directly involved, or mere argument or illustration originating with him, while *"judicial dictum"* is an expression of opinion on a question directly involved, argued by counsel, and deliberately passed on by the court, though not necessary to a decision.. While neither is binding as a decision, judicial *dictum* is entitled to much greater weight than the other and should not be lightly disregarded.

2. The will of a non-resident may be originally proved in New Jersey if he has property to be administered in that state.

3. *P. L. 1898 p. 721* §§ *23–25*, provide for proof of foreign wills after probate in a foreign state or country, and page 718, sections 13 and 14, provide that the application for probate of a will of any resident of the state shall be made to the surrogate of the county in which the testator resided at the time of his death.—*Held*, that. sections 13 and 14 relate exclusively to the probate of domestic wills, sections 23–25 being the only provisions under which foreign wills may be proved before a surrogate, and that such officer is therefore without power to grant original probate of foreign wills not already proved at the decedent's domicile, which probate can only be had in the prerogative court.

4. The surrogate of a county having no jurisdiction to grant original probate of a foreign will, jurisdiction could not be conferred by consent; and, therefore. contestant could not be estopped by prior acquiescence or consent from thereafter objecting thereto.

On appeal from a decree of the Hudson county orphans court admitting to probate certain paper-writings purporting to be the last will and testament and codicil thereto of Julia H. Chadwick, deceased.

*Mr. Gilbert Collins,* for the appellant.

*Mr. Richard Boardman* and *Mr. Robert H. McCarter,* for the respondents.

WALKER, VICE-ORDINARY.

On May 19th, 1910, two of the executors named in the will of Mrs. Chadwick, the other having renounced, propounded the will and codicil for probate before the deputy surrogate of Hudson county, and on the same day, formal proof of the execution of the papers having been made, they were admitted to probate.

On August 18th, 1910, Julia H. Chadwick, daughter and only heir-at-law and next of kin of the deceased, appealed to the orphans court from the order for probate. On July 12th, 1911, an order was made in the orphans court sustaining the jurisdiction of the deputy surrogate to admit the papers.

The petition for probate stated that the testatrix departed this life at Washington, D. C., May 6th, 1910, being at the time of her death a resident of East Hampton, Suffolk county, State of New York, and left her surviving her daughter, Julia H. Chadwick of the same place, her only heir-at-law and next of kin.

Objections made to the jurisdiction of the deputy surrogate are—*first,* that original probate of a will must be made at the domicile of the deceased; *second,* that the decedent left no real or personal property in New Jersey; *third,* that a surrogate, or his deputy, can only admit to probate the will of a resident of his county.

It is conceded that Chancellor McGill, sitting as Ordinary, in *Gordon's Case, 50 N. J. Eq. (5 Dick.) 397,* held that the will of a testator domiciled in another state at the time of his death may be proved in this state although it has not been probated at the place of domicile, if the testator left property here to be administered. He cites the following cases establishing this doc-

trine: *Stevens* v. *Gaylord, 11 Mass. 256, 263; Varnar* v. *Bevil, 17 Ala. 286; Hyman* v. *Gaskins, 5 Ired. 267; Jacques* v. *Horton, 76 Ala. 238; Wood* v. *Matthews, 73 Mo. 477, 482.*

Counsel for the appellant contends that the decision of this question in *Gordon's Case* is *dictum.* To this I assent. Chancellor McGill concedes it when he says (at *p. 400*) :

"Question as to the domicile of .Mr. Gordon, although urged on both sides at the argument, does not appear to me to be necessarily in issue at this time." The second branch of the case presented the question upon which it was decided, namely, that of forgery. Gordon's will was decided to have been supposititious and was denied probate, which rendered the decision of the question of domicile unnecessary.

The contention made on behalf of the appellant that the above cases cited by Chancellor McGill as authority for the *dictum* that the will of a non-resident decedent may be probated here if there be property here to administer, is, that they do not sustain the position taken by the learned chancellor and are not authority for his *dictum.* I incline to agree to this proposition. Nevertheless, I am not prepared to go the length of overruling that late chancellor's opinion, for this *dictum* was not *obiter,* but *judicial;* that is, it was not the expression of an opinion upon a collateral question, but one directly involved, argued by counsel and deliberately passed upon by the court, and was not a mere argument or illustration originating with the chancellor himself. *Judicial dictum,* like *obiter dictum,* is not binding as a decision, nevertheless, the former is entitled to much greater weight than the latter, and should not be lightly disregarded. Therefore, on the authority of Chancellor McGill's *judicial dictum* in *Gordon's Case,* now twenty years old (and, I believe, universally regarded as the law since its enunciation), I do not feel at liberty to hold that *original* probate of the will of a testator domiciled elsewhere, may only be had at his place of residence, even though I incline to the opinion that that is—or rather was—the better law.

The orphans court of Camden county admitted the will of a non-resident decedent to probate on the strength of the decision

in *Gordon's Case.* See *Burr* v. *Burr, 53 N. J. Eq. (8 Dick.) 627, 629.*

*Gordon's* Case was affirmed in the court of errors and appeals (*Gordon* v. *Old, 52 N. J. Eq. (7 Dick.) 317*), but without that court touching at all upon the question of domicile as related to probate.

In *Brachers' Case, 60 N. J. Eq. (15 Dick.) 350,* it appears that the testator was non-resident and that his will had not been proved, and, because it was clear that he had property in this state at the time of his death, Vice-Ordinary Reed observed that the power of this court to grant letters upon original foreign wills was established *In re Coursen's Will, 4 N. J. Eq. (3 Gr. Ch.) 408.* The case cited by the learned Vice-Ordinary (*In re Coursen's Will*), upon close inspection will hardly appear to be authority in support of the power *generally* to admit foreign wills to probate here—for all that the Ordinary said (*In re Coursen's Will*) (at *p. 415*), was that he had not the least doubt of his power to probate the will of a non-resident *when it had already been proved at his domicile.* The learned Vice-Ordinary who decided *Brachers' Case* probably had in mind *Gordon's Case* wherein Chancellor McGill broadly asserted the power to probate foreign wills without domiciliary probate first had, citing cases to sustain his decision, but among which cases is not to be found that of *In re Coursen's Will.*

No matter upon what authority Vice-Ordinary Reed predicated his decision in *Brachers' Case,* the fact is that he expressly decided that the will of a non-resident testator could be proved here if he had property to be administered here. This, at least, is a decision which I think I must follow, quite irrespective of the holding in *Gordon's Case.*

In my opinion the proofs establish that Mrs. Chadwick had property in Hudson county in this state, and, therefore, her will could be probated here, without having been proved at the place of her domicile, according to the practice of this court as established by its decisions.

The next question to be considered is whether the deputy surrogate had power to prove the will in view of the fact that Mrs. Chadwick did not reside in his county.

There is a subdivision of our Orphans Court act entitled "Foreign Wills." *P. L. 1898 p. 721.* It comprises three sections, *viz., 23, 24 and 25.* They relate to the proofs of foreign wills here after admission to probate in a foreign state or country; the filing in this state of a copy of any will or of the record of any will admitted to probate in a foreign state or country; and the supplementing of the foreign probate of any will with proofs here to show that it was executed in the manner required by our laws to affect the title to real estate situate in this state.

Another subdivision of the Orphans Court act is "Probate of Wills." *Ibid. 718.* It provides in *section 13* that the surrogates of the several counties shall admit wills to probate, and *section 14* provides that application for the probate of a will of any person who was *a resident* of this state at his decease shall be made to the surrogate of the county in which the testator resided at the time of his death.

These provisions, in my judgment, are to be read together and given a harmonious construction. Such construction, to my mind, requires that the provisions of *sections 23, 24, 25,* relating to foreign wills, are the only ones under which foreign wills may be proved here before a surrogate; and that the provisions concerning the probate of wills in *sections 13, 14,* refer exclusively to the probate of domestic wills, and that the general language of *section 13*—that the surrogates of the several counties shall admit wills to probate, does not extend to clothe those officers with power to grant *original* probate of foreign wills not already proved at the domicile of the decedent.

These views lead to a reversal of the decree of the orphans court sustaining the deputy surrogate's probate of the will in question.

After the argument of this case, which was had upon the record brought up from the orphans court, counsel for the proponents applied to this court for leave to open the proofs and take further testimony. This was opposed by counsel for the appellant. The power of this court to take such testimony is undoubted, but the propriety of the exercise of that power in this case would appear to be at least questionable. However, that point is not decided, because, the decree below being re-

versed, .the proponents may offer the will of Mrs. Chadwick for original probate in this court, and all questions of evidence will necessarily have to be passed upon on that proceeding. If, however, the proponents choose to stand on the probate before the deputy surrogate and take an appeal from the decree to be made in this cause, then all other questions involved in the litigation between the parties may be reserved until after the decision of the court of errors and appeals, in accordance with the stipulation which appears in the record.

The question upon which this decision has turned, namely, that of power, or rather want of power in the deputy surrogate to probate the will of a foreign decedent, was not decided in the court below, and, apparently, was not raised. It was, however, raised and insisted upon in this court, and is, therefore, necessarily decided here.

Before leaving the subject I ought to state that it was claimed in this case by the proponents that the appellant consented to the probate of the will in Hudson county, and, after probate, aided in the administration of the estate. As to this my holding is, that consent could not and did not confer jurisdiction where it was lacking—assuming that the declarations and acts of the appellant amounted to consent and acquiescence. The question is one of power under legislative enactment, not of power bestowed by the parties. They were impotent by their acts to bestow a grant of power that could only be made by the legislature. Equally the doctrine of estoppel invoked by the proponents does not apply.