861 A.2d 176 (2004)
373 N.J. Super. 271
STATE of New Jersey, Plaintiff-Respondent,
v.
Russell BREITWEISER, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 2004.
Decided November 29, 2004.
*178 Edward C. Bertucio, Jr. argued the cause for appellant (Hobbie, Corrigan, Bertucio & Tashjy, attorneys; Norman M. Hobbie, of counsel, Mr. Bertucio, on the brief).
Jhanice V. Domingo Assistant Prosecutor, argued the cause for respondent (Wayne J. Forrest, Somerset County Prosecutor, attorney; Ms. Domingo, on the brief).
Before Judges KESTIN, LEFELT and FUENTES.
The opinion of the court was delivered by
FUENTES, J.A.D.
In State v. Zeidell, 154 N.J. 417, 713 A.2d 401 (1998), the Supreme Court defined second-degree-tender-years sexual assault as an intentional touching by the actor of his or her intimate parts, for arousal or sexual gratification, in the view of an underage child, whom the actor knows to be present. Id. at 431, 713 A.2d 401 (citing N.J.S.A. 2C:14-2b, 14-1d). The central question we must answer in this appeal is: can a defendant be convicted of this offense when it is undisputed that the underage victim did not actually view the allegedly offensive conduct? After consideration of the arguments advanced by the parties and in light of prevailing legal standards, we conclude that the answer is "yes."
*179 An analysis of this issue requires us to demarcate the outer limits of conduct sufficient to constitute "in the view of" the underage victim. Ordinarily, "in the view of" contemplates a scenario where the victim actually witnesses the offensive conduct. We hold, however, that, in order to satisfy this statutory element, the State is not required to prove that the underage child actually observed the offensive touching. To establish that the offensive conduct occurred "in the view of" the underage victim, it is sufficient for the State to prove, beyond a reasonable doubt, that either (1) the underage child actually observed the act; or (2) there was an unreasonable risk that the underage child might view the act. Our holding in this respect is informed by the Court's dictum in Zeidell.

I
Defendant Russell Breitweiser was tried before a jury and convicted of second-degree-tender-years sexual assault, N.J.S.A. 2C:14-2b. The court granted the State's motion for an extended term of imprisonment pursuant to N.J.S.A. 2C:44-3a, and, thereafter, sentenced defendant to: (1) serve a discretionary extended term of fifteen years, with seven and one-half years to be served without parole eligibility; (2) comply with the registration requirements imposed by "Megan's Law;" (3) submit to community supervision for life; (4) provide a DNA sample for inclusion in a sex offender population database; and (5) serve a five-year term of parole supervision commencing upon his release from prison. N.J.S.A. 2C:7-1 to -19; N.J.S.A. 2C:43-6.4. The court also imposed the mandatory fines and penalties.
Defendant now appeals raising the following arguments:
POINT I
THE TRIAL COURT ERRED IN ITS CHARGE TO THE JURY AND IMPROPERLY INCORPORATED LANGUAGE FROM STATE V. ZEIDELL THAT WAS DICTUM AND NOT LAW AS TO THIS CHARGE.
POINT II
THE MOTION TO DISMISS THE INDICTMENT SHOULD HAVE BEEN GRANTED IN THIS CASE.
POINT III
APPELLANT'S MOTION TO ENTER A DIRECTED VERDICT OR JUDGMENT OF ACQUITTAL AT THE CLOSE OF THE STATE'S PROOFS SHOULD HAVE BEEN GRANTED.
POINT IV
THE TRIAL COURT ERRED IN REFUSING TO ALLOW DEFENSE COUNSEL TO COMMENT FREELY IN SUMMATION ON THE FAILURE TO PRODUCE THE ALLEGED VICTIM AND FURTHER ERRED IN FAILING TO GIVE THE ADVERSE INFERENCE CLAWANS CHARGE.
POINT V
THE TRIAL COURT ERRED IN REFUSING TO DISBAND THE VENIRE PANEL THAT WAS CALLED INTO TRIAL AFTER TWO OF THE JURORS HAD MADE OBVIOUSLY INTEMPERATE AND INAPPROPRIATE COMMENTS IN FRONT OF FELLOW PANEL MEMBERS.
POINT VI
THE TRIAL COURT OVERRULED CERTAIN DEFENSE OBJECTIONS DURING THE TRIAL THAT SHOULD HAVE BEEN SUSTAINED WHICH LED TO OVERALL UNFAIR PREJUDICE AGAINST THE DEFENSE REQUIRING *180 A REVERSAL OF THE CONVICTION.
POINT VII
PROSECUTORIAL MISCONDUCT OCCURRED DURING THE PROSECUTOR'S SUMMATION REQUIRING REVERSAL OF THE CONVICTION. [RAISED AS PLAIN ERROR UNDER R. 2:10-2] AND THE CUMULATIVE ERROR IN THIS MATTER REQUIRES REVERSAL OF THE CONVICTION.
POINT VIII
THE MOTION FOR AN EXTENDED TERM SENTENCE IN THIS MATTER SHOULD HAVE BEEN DENIED AND/OR THE SENTENCE WAS EXCESSIVE.
We reject these arguments and affirm.
The salient facts are not disputed. On March 6, 2001, Thomas Wolf was working as a loss prevention officer in a Shop Rite supermarket located in Franklin Township. He was stationed in a catwalk located in the rear of the store when he first noticed defendant.
Wolf described the catwalk as "a hallway which overhangs the back of the store, which allows loss prevention personnel and authorized store management to monitor the store [by looking] through vents." These modified heating vents, which were also referred to as viewing ports during the trial, are located at the end of each store aisle. The particular vent that Wolf was looking through when he sighted defendant measured over nineteen inches in length and over four inches in width. A series of slats ran vertically across the vent with each separated from the other by one-half inch of space.
Through the vent, Wolf observed defendant walk past aisle two carrying a rotisserie chicken. Also in aisle two, standing by the eye care section, was an eight-year-old girl whom we will refer to as "Nancy."[1] Defendant was thirty-seven years old at the time. From his vantage point Wolf saw defendant walk directly toward Nancy. As defendant got within a few feet of the child, she turned around, looked straight at him and walked around him, going across the aisle to the greeting cards section. Defendant then began walking down the aisle toward the front of the store.
There was one unidentified woman standing near the greeting cards rack when Nancy reached this area. As he walked down the aisle, defendant continued to look back toward the area where the woman and Nancy were standing. When the woman left the area, defendant immediately turned around and headed straight toward Nancy. Wolf gave the following description of what occurred next.
Q. Where was the Defendant looking?
A. Looking directly at [Nancy].
Q. Did he look at any other merchandise in that aisle?
A. No, he did not.
Q. While the Defendant turned around and looked at [Nancy], did he proceed to walk anywhere?
A. Yes, he proceeded to walk towards [Nancy].
Q. How close did he get to [Nancy]?
A. Within one foot.
Q. While he proceeded to walk towards [Nancy], from what vantage point were you able to see him?
A. I was above the aisle, in the catwalk, and I had a full vantage point. There was nothing obstructing my view.
Q. Full frontal view of him?

*181 A. Frontal view.
Q. Could you see him head to toe?
A. Yes, I could.
Q. While you had that full frontal view of the Defendant and he was walking towards [Nancy], did he do anything with his hand that caught your attention?
A. Yes.
Q. What did he do?
A. He began to masturbate through his jeans.
Q. You're using the word "masturbate", I have to ask you this.
A. Okay.
Q. How do you know that he was masturbating?
A. Because he was grabbing his penis and stroking it in an up and down motion.
Q. Could you see his hand?
A. Yes.
Q. Would you be able to demonstrate for the jury the way that the Defendant had his hand positioned in relation to his penis on the clothes? Could you demonstrate for us?
A. Yes, It was half cupped, like this, and he was stroking it back and  up and down on his penis.
Q. Cupped in such a way, could you tell whether it was cupped around the penis?
DEFENSE ATTORNEY: Objection, Judge, that's a leading question.
THE COURT: Overruled. You may answer the question.
A. Repeat the question.
Q. Was it cupped in such a way that you could tell whether it was cupped around something or around the penis?
A. You could tell it was definitely on the penis. I couldn't tell you if it was directly around it.
Q. As he was, as the Defendant was walking towards [Nancy], you said he was  I don't want to put words in your mouth, moving his hand up and down.
A. He was stroking it up and down.
Q. Where was he looking as he was walking towards [Nancy] with his hand on his penis stroking it up and down?
A. He was looking at, directly at [Nancy].
Q. Did he stop to look at any merchandise in the aisle?
A. No.
Q. Did you see him turn his head to look at any merchandise in the aisle?
A. No.
Q. Did he ever turn his head at all from where [Nancy] was positioned?
A. No.
Q. When he got up behind  you said he got right up next to [Nancy]?
A. Yes, right behind her.
Q. While you were watching this happen, were you actually counting the number of seconds that it was happening?
A. I wasn't counting the number of seconds.
Q. When the Defendant got right up behind [Nancy], what happened?
A. He got right behind her, he was still stroking himself, and about a split second [Nancy] turned around and noticed that he was there.
Q. After [Nancy] turned around, well, when she turned around, who did she look at?
A. The Defendant.
Q. And during this period of time that the Defendant walked up to [Nancy] and is initially standing behind her, is anybody else in that greeting card aisle besides the Defendant and [Nancy]?
A. No, there is not.
*182 On cross-examination, Wolf testified that he did not see defendant expose his penis or any other part of his genitalia. He also did not see any indication that defendant had an erection.
The entire episode was captured on videotape by a store security surveillance camera. The recording was admitted into evidence and shown to the jury. In contrast to Wolf's "full frontal view" line of vision, the camera recorded defendant's movement from behind and to the side. Although the recording is unable to fully corroborate Wolf's description of defendant's "masturbation-like" movements as he walked toward Nancy, it does show defendant's hand move to his groin area. Defendant is also seen ostensibly walking down the aisle and away from Nancy, while repeatedly looking back at an adult woman as she walks out of the aisle. Once the woman leaves, defendant immediately turns around and heads directly to where Nancy is standing.
The videotape clearly shows defendant standing in close proximity to and directly behind the child during the time Wolf testified the sexual touching took place. In fact, at one point, the tape shows defendant standing at an angle to the child, in such a manner as to place his movements within the scope of her peripheral vision. The recording also shows that the child turned her head, as if sensing defendant's presence, and looked straight at defendant. The camera's on-screen chronometer indicated that the entire episode lasted approximately ten seconds.
It is undisputed that Nancy never saw defendant touch himself. In fact, the evidence is clear that Nancy left the store that day unaware that anything untoward had taken place. Her parents, in an effort to shield her from the traumatic experience of having to testify at the trial, refused to cooperate with the State in this prosecution. It is thus entirely possible that this child remains, to this day, blissfully unaware that this entire incident ever took place.[2]
Wolf detained defendant as he was about to leave the store and escorted him to the manager's office. Once there, he advised defendant that he was not suspected of shoplifting and asked him if he knew why he was being detained. According to Wolf, defendant responded: "because of the little girl." Also present at the time was store manager Salvatore Gatto, who testified that defendant repeated this statement, "because of the little girl" two to three times.

II

A
Defendant argues that the trial court erred when it relied on the following dictum from Zeidell to (1) deny his motion to dismiss the indictment; (2) deny his motion for a judgment of acquittal; and (3) craft the instructions given to the jury.
[S]exual assault does not require the underage child to actually observe the touching. The requirement "in the view of" an underage child does not require any mens rea at all; it is a factual question: Was the prohibited act done in a child's field of vision or not? Alternatively, "in view of" could be interpreted to mean that there were unreasonable risks that an underage child present might view the act. Here, evidence established that defendant knew the children were present and that he was in their field of vision. The testimony that the children actually saw the *183 prohibited act establishes that the act must have been in their view. Thus, where there is an actual underage child who has actually viewed the defendant and as in this case, whose presence is known by the defendant, the Court need not reach the more difficult question of whether the defendant would be guilty if he engaged in sexual contact in front of a child whom he knew to be present and within view, but who, for whatever reason, did not actually view or observe the conduct. In the latter situation, the "in view of" standard could constitute a basis for strict liability under the Code and the defendant might be guilty regardless of whether a child whom he knew to be present actually witnessed the act. In contrast, the "in view of" standard might constitute a basis for guilt if there was an unreasonable risk that a child might see the defendant engage in the sexual contact. Those issues, however, are not raised by the facts in this case, and we decline to reach them.
[Zeidell, supra, 154 N.J. at 431-32, 713 A.2d 401 (emphasis added.)]
As the Zeidell Court itself recognized, the emphasized language cited above touched upon legal issues that were not raised by the factual context of the case. In that sense, the Court's analysis is clearly dictum. That being said, we find little analytical value in attempting to draw meaningful distinctions between a Supreme Court's holding and expressions of well-reasoned dictum. Both are legal pronouncements by our State's highest judicial body and are therefore worthy of and entitled to the utmost respect. Indeed, as an intermediate appellate court, we consider ourselves bound by carefully considered dictum from the Supreme Court. Barreiro v. Morais, 318 N.J.Super. 461, 468-69, 723 A.2d 1244 (App.Div.1999). See also Commercial Realty and Resources Corp. v. First Atlantic Properties Co., 235 N.J.Super. 577, 590 n. 9, 563 A.2d 866 (App.Div.), aff'd as modified 122 N.J. 546, 585 A.2d 928 (1991) ("Dicta by our Supreme Court is entitled to weight."); Lehigh Valley R.R. Co. v. Chapman, 35 N.J. 177, 187, 171 A.2d 653, cert. denied, 368 U.S. 928, 82 S.Ct. 364, 7 L.Ed.2d 192 (1961); cf. Shaw v. City of Jersey City, 346 N.J.Super. 219, 229, 787 A.2d 268 (App.Div.), rev'd on other grounds 174 N.J. 567, 811 A.2d 404 (2002).
We do recognize, however, that there are situations where the Court engages in collateral discussions about a subject matter that is not before it, for either didactic purposes, or as a means of elucidating a complex legal principle. We are satisfied that the Court's analysis in Zeidell, relied upon by the trial court, constituted dictum entitled to deferential application because, although not necessary to the decision reached, the language cited dealt directly with the central issue in the case, to wit, the delineation of conduct sufficient to support a conviction for second-degree-tender-years sexual assault. See, e.g., Crescent Ring Co. v. Travelers' Indem. Co., 102 N.J.L. 85, 89, 132 A. 106 (E. & A.1926); In re Chadwick's Will, 80 N.J. Eq. 168, 82 A. 918 (Prerog.Ct.1912). We will thus utilize it here to guide and inform our analysis of the issues presented.

B
We are confronted here, as was the trial court, with the "more difficult question" the Zeidell Court acknowledged was not directly before it. That is, can a defendant be found guilty of second-degree-tender-years sexual assault when (1) the child does not see defendant engage in the sexual contact; and (2) the contact occurs while the child has his/her back to defendant? *184 In addressing these issues, we will be guided by the Zeidell Court's analysis and will utilize the "unreasonable risk" standard the Court predicted would apply to these facts.
Defendant argues that, even if there is no requirement that the child actually sees the act, the offending conduct must, at least, take place within her "field of vision." Through its verdict, the jury found that defendant engaged in what Wolf described as over-the-clothing "masturbation-like" movements, from a distance of approximately one foot away and directly behind the eight-year old victim.[3] In this light, and without conceding culpability, defendant argues that his conduct was never in the child's field of vision.
Defendant's argument lacks both textual and common sense support. As previously noted, the Supreme Court has stated that a victim of second-degree-tender-years sexual assault need not actually observe the offending conduct. Zeidell, supra, 154 N.J. at 431, 713 A.2d 401. See also State v. Hackett, 166 N.J. 66, 74-75, 764 A.2d 421 (2001). In our judgment, the so-called "in the field of vision" test includes, as an indispensable component, the "unreasonable risk" factor. That is, as stated by the Court in Zeidell, there must be "an unreasonable risk that the child might see the defendant engage in the sexual contact." Zeidell, supra, 154 N.J. at 432, 713 A.2d 401.
What amounts to an "unreasonable risk" involves, by necessity, a fact-sensitive analysis. Here, defendant stood in close proximity to the child while he engaged in the sexual contact. The fact that she was facing away from him is of no moment. There was clearly an unreasonable risk that she would turn her head and look behind her, which she did at one point. We see no meaningful distinction between a child who is facing the actor, with her head down, perhaps reading a book, and one who is standing with her back to him. In both instances, the child-victim is exposed to the unreasonable risk that he or she might see the actor engaged in the prohibited act. In fact, a literal application of the "line of vision" test could criminalize conduct that takes place seventy-five feet from the victim and insulate from prosecution behavior that occurs one foot behind the victim. We decline to endorse such an absurd result.
As a logical extension of our analysis, we also reject defendant's argument that the record only supports a conviction for the disorderly persons offense of lewdness. N.J.S.A. 2C:14-4a defines this offense as the commission of "any flagrantly lewd and offensive act which [the actor] knows or reasonably expects is likely to be observed by other nonconsenting persons who would be affronted or alarmed." Although the prohibited conduct involved here is arguably covered by this definition, the age of the intended victim renders N.J.S.A. 2C:14-4a inapplicable on its face, because an underage child is legally incapable of consenting to any type of sexual activity.
Defendant also argues that adoption of the "unreasonable risk" standard for determining whether the sexual contact occurred "in the view of" the underage victim would create a bizarre and legally untenable outcome. It would treat conduct that the underage victim never sees (sexual contact by the actor with himself) *185 more harshly than seemingly more objectively shocking conduct, fourth-degree lewdness involving actual exposure by the actor of his or her private parts. According to defendant, the latter conduct (lewdness) must actually be seen by the child-victim in order to sustain a conviction. Defendant is incorrect as a matter of law.
N.J.S.A. 2C:14-4b defines fourth-degree lewdness as follows:
A person commits a crime of the fourth degree if:
(1) He exposes his intimate parts for the purpose of arousing or gratifying the sexual desire of the actor or of any other person under circumstances where the actor knows or reasonably expects he is likely to be observed by a child who is less than 13 years of age where the actor is at least four years older than the child. [Emphasis added.]
As the emphasized language clearly shows, in order to sustain a conviction for fourth-degree lewdness, the State need not prove that the prohibited conduct was actually seen by the underage victim. It is sufficient that the evidence show, beyond a reasonable doubt, that the exposure occurred "under circumstances where the actor knows or reasonably expects he is likely to be observed" by the child victim. N.J.S.A. 2C:14-4b(1). This language speaks to the actor's mens rea, Zeidell, supra, 154 N.J. at 431, 713 A.2d 401, not to the conditions affecting the victim's perception of events.
Thus, a conviction for fourth-degree lewdness could rest on proofs showing that the actor exposed his private parts, for the purpose of arousing or gratifying his or her sexual desire, in front of a grammar school playground while school was in session. From this evidence, a jury can draw the rational inference that the actor knew or reasonably expected that children under the age of thirteen were likely to see him. Actual victim observation is not required.
The "unreasonable risk" standard, applicable in cases involving second-degree-tender-years sexual assault, does not require any mens rea at all. Ibid."Unreasonable risk" envisions circumstances that expose the child-victim to the strong likelihood that he/she will actually see the prohibited act. An actor's mental state is not implicated in this determination. It is purely an issue of fact to be determined by the jury from the evidence presented.
We therefore hold that, in order to convict a defendant of second-degree-tender-years sexual assault, the State must prove, beyond a reasonable doubt, that defendant engaged in an intentional touching of his or her intimate parts, for arousal or sexual gratification, in the view of an underage child, whom defendant knows to be present. To establish that the sexual contact occurred "in the view of" the underage victim, it is sufficient for the State to prove, beyond a reasonable doubt, that either (1) the underage child actually observed the act; or (2) there was an unreasonable risk that the underage child might view the act. We are satisfied that the record here amply supports defendant's conviction.

C
The balance of defendant's arguments lack sufficient merit to warrant extensive discussion in a written opinion. R. 2:11-3(e)(2). Defendant argues that the trial court erred when it declined to give an adverse inference charge based on the State's failure to call Nancy as a witness. State v. Clawans, 38 N.J. 162, 170, 183 A.2d 77 (1962). However, as the prosecutor conceded during her summation, the *186 State did not present any evidence that the child actually saw defendant engage in sexual contact. In this light, even assuming that the trial court erred when it concluded that Nancy was unavailable, such alleged error was without legal consequence.
There is also no evidence that the trial court erroneously exercised its discretion in responding to an isolated incident of possible juror misconduct. The court properly dismissed the potential tainted juror and, thereafter, reassured itself that the rest of the panel had not been contaminated. Finally, there is no evidence that the prosecutor's remarks to the jury were in any way improper. The prosecutor properly limited her comments to addressing the stipulation that defendant's presence at the Shop Rite may have been related to a legitimate business appointment. The prosecutor's description of defendant's actions as opportunistic and impulsive, as opposed to thought-out or premeditated, are characterizations supported by the evidence.
There is also no evidence that the trial judge was in any way unfair or biased against defendant or his counsel. Each evidentiary ruling had appropriate legal support and was communicated to counsel in a professional and dignified manner.
Finally, the extended-term sentence imposed by the court was supported by the record and followed the required procedures. State v. Dunbar, 108 N.J. 80, 527 A.2d 1346 (1987); N.J.S.A. 2C:44-3. Defendant was thirty-seven years old at the time he committed this offense. By this time, he had amassed five indictable convictions, including second-degree robbery, possession of cocaine, third-degree endangering the welfare of a child[4] and a federal conviction for abusive sexual contact with a minor aboard an aircraft,[5] 18 U.S.C.A. § 2244. He also has had multiple unsuccessful terms of probation and, while on parole, has repeatedly violated the conditions imposed thereunder, requiring his re-incarceration. In these circumstances, the court's findings as to aggravating factors N.J.S.A. 2C:44-1a (3), (6) and (9), were well-supported by competent, reasonably credible evidence. State v. Roth, 95 N.J. 334, 363, 471 A.2d 370 (1984).
Affirmed.
NOTES
[1] "Nancy" is a fictitious appellation used here to protect the child's anonymity.
[2] Although Nancy gave a statement to the police shortly after the incident, there is nothing in the record that suggests that she is aware of the substance of the charge.
[3] As noted earlier, the videotape depicts one instance when defendant stands at angle to the child, possibly coming within the scope of her peripheral vision. For purposes of our discussion, however, we will assume that the child's back was turned toward defendant during the time he engaged in the prohibited act.
[4] The victim in that case was a thirteen-year-old girl whom defendant lured into his car. Defendant, thereafter, masturbated in front of the child and ejaculated on her pants.
[5] The victim in that case was a fourteen-year-old girl whom defendant molested aboard an airplane while the child was traveling with her eighteen-year-old sister. According to the Pre-Sentence Investigation Report, defendant touched the child's leg and upper and inner thigh and masturbated with a pillow on his lap.