**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2840-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KYSHAWN T. BURCH,

    Defendant-Appellant.

_____

Submitted March 25, 2019 – Decided April 23, 2019

Before Judges Messano and Rose.

On appeal from Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 14-11-0824.

Joseph E. Krakora, Public Defender, attorney for appellant (John W. Douard, Assistant Deputy Public Defender, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Steven A. Yomtov, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Tried to a jury, defendant Kyshawn T. Burch was convicted of attempted murder and related weapons offenses for his involvement in the drive-by shooting of Shyquan Lewis. During the five-day trial, the State presented police and expert testimony that the weapon used in the shooting was seized from defendant's glove compartment shortly after the incident. Defendant was sentenced to an aggregate nineteen-year prison term, with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.[1]

On appeal, defendant raises the following arguments for our consideration:

> POINT I
>
> THE COURT ERRED IN DENYING THE MOTION TO SUPPRESS BECAUSE THE OFFICER LACKED PROBABLE CAUSE, ABSENT A WARRANT, TO IMPOUND AND ENTER [DEFENDANT]'S CAR, RENDERING THE PHYSICAL EVIDENCE FRUIT OF THE POISONOUS TREE.
>
> POINT II
>
> THE COURT VIOLATED [DEFENDANT]'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL BY

---

[1] The judge also sentenced defendant to a concurrent five-year term on a violation of probation for a separate indictment, which is not the subject of this appeal.

ADMITTING "EXPERT" BALLISTICS TESTIMONY THAT IS CONTRARY TO THE CURRENT STATE OF THE SCIENCE AND FEDERAL LAW AND IS THEREFORE UNRELIABLE AND INADMISSIBLE UNDER N.J.R.E. 702.  U.S. CONST. AMENDS. VI, XIV; N.J. CONST., ART. I, PARS. 1, 10. (Not raised below)

A.    Subjective Ballistics Toolmark Evidence Is Inadmissible Under N.J.R.E. 702 As It Is Unreliable.

B.    Alternatively, This Court Should Remand The Matter For A R[ule] 104 Hearing As To The Scientific Reliability Of This Evidence, If Any.

POINT III

THE [NINETEEN]-YEAR AGGREGATE SENTENCE WAS MANIFESTLY EXCESSIVE.

We reject these arguments and affirm.

I.

We begin by addressing defendant's contention that the trial court erroneously denied his motion to suppress the evidence seized from his vehicle.[2] At the suppression hearing, the State presented the testimony of Bridgeton Police Detective Kenneth Leyman.  Defendant did not testify nor present any evidence at the hearing.

---

[2] The motion was filed jointly with co-defendant Raheem Jamison, who was not tried with defendant.

A-2840-16T4

According to Leyman, on November 25, 2013 at approximately 8:30 p.m., police were dispatched to the intersection of Burlington Road and Irving Avenue in Bridgeton following a report of shots fired. No one was present at the scene, Lewis having driven himself to an area hospital with a gunshot wound to the abdomen. At the scene, police recovered thirteen .45 caliber shell casings and pewter-colored "paint chips or paint flecks."

Shortly thereafter, police responded to the hospital and observed a pewter-colored Murano, with multiple bullet holes, parked outside the emergency room. Lewis told police he was driving the Murano when another car pulled beside his car at the intersection and its occupants "opened fire on his vehicle." Lewis provided no further description of the other car.

Police quickly learned Lewis had driven to the scene immediately after leaving the Town and Country Liquor Store, where there might have been "an altercation." Surveillance footage of the store's parking lot did not depict an altercation, but it captured the Murano entering the lot, parking while one of its occupants entered the store, then exiting the lot when the passenger returned. Shortly thereafter, a purple or light red Mitsubishi Galant, with a spoiler on its trunk, distinctive wheels, and paint peeling from its roof, entered the parking lot then quickly turned around and exited the lot traveling in the same direction as

A-2840-16T4

the Murano. The driver of the Galant was depicted wearing a dark shirt with a white logo. The shooting occurred less than one mile from the store, within two to four minutes after the Galant left the lot.

At approximately 1:00 a.m., police issued a "be on the lookout" (BOLO) advisory for the Galant. Within a half hour, police stopped the Galant, owned and driven by defendant, who "was wearing a dark-colored sweatshirt with a white logo on the left breast." The Galant matched the description of the car seen in the video footage. Leyman "observed what appeared to be fresh bullet marks or fresh bullet strikes in the exterior of the vehicle . . . [o]n the trunk, under the right side of the spoiler and in the roof above the rear passenger compartment." The Galant also was occupied by Raheem Jamison and defendant's father Michael Downing, Sr. Jamison was arrested on outstanding warrants, but defendant and Downing were not detained.

Suspecting the Galant was involved in the shooting, Leyman impounded the car in anticipation of obtaining a search warrant. Because the Bridgeton Police Department (BPD) did not have its own secure garage to impound the vehicle, it was towed to Ed's Body Shop (EBS). According to Leyman, the BPD utilized EBS on a rotating basis with another private shop to impound vehicles. While "jerk[ing] the vehicle from the flatbed" truck, the driver heard a "thump

or a thud." When he looked inside the car, the driver noticed the glove compartment had opened, and he observed "what he believe[d wa]s a handgun inside." The driver then contacted the BPD to remove the weapon.

Leyman responded to EBS, observed the gun in the opened glove compartment, unlocked the vehicle, and removed the semiautomatic pistol, which was loaded with "a live .45 caliber cartridge in the chamber." According to Leyman, EBS is a secure facility, but is accessible to members of the public. Leyman said, "[o]nce [he] saw the gun, [he] didn't feel comfortable leaving it without either [him]self or another police officer there to monitor that vehicle." Leyman did not conduct any further search of the Galant until a search warrant was issued the following day. Police then recovered another .45 caliber semiautomatic weapon and a .22 caliber revolver from a coat located in the trunk area, and a projectile from the interior rear passenger side of the car.

Immediately following summations, the trial judge issued a cogent oral decision on June 24, 2015. Based on the testimony he heard and his observation of the witness, the judge made credibility and factual findings consistent with the facts recited above. The judge found Leyman's testimony "extremely credible," and determined the stop was justified. Ultimately, the judge concluded the seizure of the firearm from the glove compartment was

6

permissible because the "unique circumstances" satisfied the inevitable discovery exception to the warrant requirement. Accordingly, the judge denied the suppression motion, which defendant now challenges on appeal.

Our review of a trial court's decision on a suppression motion is circumscribed. State v. Robinson, 200 N.J. 1, 15 (2009). We defer to the trial court's factual and credibility findings, as long as they are supported by sufficient credible evidence in the record. State v. Handy, 206 N.J. 39, 44 (2011); State v. Elders, 192 N.J. 224, 243-44 (2007). Deference is afforded because the "findings of the trial judge . . . are substantially influenced by his opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Reece, 222 N.J. 154, 166 (2015) (alteration in original) (citation omitted). We disregard a trial court's factual and credibility findings only if clearly mistaken. State v. Hubbard, 222 N.J. 249, 262 (2015). The legal conclusions of the trial court, however, are reviewed de novo. Id. at 263.

In this case, defendant primarily contends "[t]he judge did not specifically address the question whether the impoundment and removal of the car was either reasonable or based on probable cause." In doing so, defendant apparently concedes the propriety of the "warrantless stop and removal of the occupants

from the car were proper on the basis of the BOLO description." Instead, he claims the "single possible bullet strike hardly constituted probable cause for the impoundment." Defendant's claims are unavailing.

Indeed, defendant's argument completely ignores the judge's factual findings and conclusions of law, which were reasonably based on Leyman's perception of the events and circumstances as they unfolded in the hours after the shooting.

Specifically, the judge determined "probable cause existed to search [the Galant], predicated [upon Leyman's] . . . observations of . . . the vehicle, after the vehicle was stopped for an investigative detention . . . ." The judge found significant Leyman's observation of a projectile's copper jacket "embedded in the surface of the trunk." That condition suggested the bullet strike was "fresh," i.e., it "did not have time to be washed off or wear off or fall off." The judge also cited Leyman's belief that the strike to the vehicle's roof would likely yield a bullet inside the vehicle.

The judge therefore concluded, "at that point in time" Leyman intended to obtain a search warrant because the detective believed a bullet was located in the vehicle. Notably, the judge determined that even though the weapon seized from the glove compartment was referenced in the ensuing search warrant

affidavit, Leyman intended to apply for the warrant <u>before</u> the gun was seized, based on his observations of the bullet strikes on the Galant. The judge thus concluded, "there was sufficient evidence, under the circumstances here, that a [c]ourt would have ordered a search warrant." <u>See</u> <u>State v. Evers</u>, 175 N.J. 355, 381 (2003) ("Before issuing any warrant, a judge must be satisfied that there is probable cause to believe that a crime has been or is being committed at a specific location or that evidence of a crime is at the place to be searched.").

Turning to the warrantless seizure of the firearm from the glove compartment, the judge again referenced Leyman's intention to obtain a warrant to search the Galant before the car was impounded. Because the State demonstrated "proper normal and specific investigatory procedures would have been pursued," the judge determined the weapon was properly seized under the inevitable discovery doctrine. We agree.

Seized as the result of a warrantless search, the weapon recovered from the glove compartment must fall within an exception to the exclusionary rule in order to avoid suppression. <u>See</u> <u>State v. Smith</u>, 212 N.J. 365, 389 (2012). The inevitable discovery doctrine is one such exception to the exclusionary rule. <u>Ibid.</u> The doctrine comports with the generally accepted principle that "[i]f the evidence would have been obtained lawfully and properly without [police]

misconduct, exclusion of the evidence would put the prosecution in a worse position than if no illegality had transpired." State v. Sugar, 100 N.J. 214, 237 (1985) (Sugar II). To invoke the doctrine, the State must show by clear and convincing evidence that

> (1) proper, normal and specific investigatory procedures would have been pursued in order to complete the investigation of the case; (2) under all of the surrounding relevant circumstances the pursuit of those procedures would have inevitably resulted in the discovery of the evidence; and (3) the discovery of the evidence through the use of such procedures would have occurred wholly independently of the discovery of such evidence by unlawful means.
>
> [Id. at 238.]

We are satisfied probable cause existed for the issuance of a search warrant here. See State v. Smith, 155 N.J. 83, 93 (1998) (holding that the issuing judge is to determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place"). Because a warrant would have inevitably resulted in the discovery of the firearm in Galant's glove compartment, we find that it was reasonable for the judge to conclude the

10

inevitable discovery doctrine was applicable under these circumstances as an exception to the exclusionary rule.[3]

Further, the judge's factual findings are substantially supported by sufficient credible evidence in the record. Importantly, the firearm seized from the glove compartment was inadvertently discovered by a private citizen during the course of impounding the car. Leyman's actions in securing that vehicle were entirely reasonable in light of the public's access to the garage. In addition, the judge's findings were based on his assessment of Leyman's demeanor as he testified and the judge's feel of the case. Accordingly, we defer to the judge's findings. Reece, 222 N.J. at 166.

## II.

We next address defendant's newly-minted argument which, in essence, mounts a wholesale attack on the reliability of ballistic toolmark comparison techniques. Defendant claims, for the first time on appeal, that the opinions of

---

[3] Arguably, the seizure also was supported by: (1) the community-caretaking doctrine where, as here, the vehicle was impounded in a public garage, see State v. Robinson, 228 N.J. 529, 549-50 (2017); and (2) exigent circumstances because, as the trial judge noted, defendant and his father were not detained, which "meant that the registered owner of the vehicle and potentially another set of keys to the vehicle exi[s]ted, outside of the control of law enforcement, in a commercial location not secured by law enforcement." See State v. Martin, 87 N.J. 561, 569 (1981).

the State's ballistics expert were based "solely on his own subjective analysis" rendering it unreliable and inadmissible under N.J.R.E 702 and various secondary sources.

At trial, the State presented the expert testimony of Gerald Burkhart, a former investigator with the State Police Laboratory, who was qualified as an expert in the field of firearms examinations. Notably, following the State's voir dire, defendant stipulated to Burkhart's qualifications as an expert.

Pertinent to this appeal, Burkhart testified he compared the "lands and grooves" of the barrel of the .45 caliber pistol recovered from the glove compartment with the four bullets recovered from the scene and concluded, to a "practical degree of certainty" that all four bullets were fired from that firearm. Burkhart's examination of the shell casings recovered from the scene also revealed that eleven of the casings were discharged from the weapon seized from the glove compartment, and the remaining two casings were discharged from the other .45 caliber firearm seized from the trunk.

We decline to entertain defendant's challenges to Burkart's testimony for several reasons. Initially, defendant relies on a series of scientific articles and reports, which were not presented to the trial court. Accordingly, the material is inappropriate for our consideration on appeal. See Zaman v. Felton, 219 N.J.

12

199, 226-27 (2014); see also N.J. Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 28 (2013) (neither trial courts nor appellate courts can "fill in missing information on their own").

Secondly, because defendant did not object at trial to Burkhart's testimony, the present record is woefully inadequate to evaluate the scientific underpinnings of the expert's opinions about toolmark comparison techniques and the present state of the scientific research. Defendant did not request an evidentiary hearing concerning the admissibility of the expert's testimony. Indeed, following the State's voir dire, defense counsel stipulated to Burkhart's qualifications as an expert in the field of firearms examination, without conducting any cross-examination, whatsoever, concerning his qualifications. Accordingly, the State was deprived the opportunity to present competing scientific evidence that toolmark comparison techniques remain a valid and reliable form of expertise and edification for the jury.

Further, our institutional role as an intermediate appellate court is a limited one. We are bound to follow the precedents of the United States Supreme Court and the Supreme Court of New Jersey, regardless of whether those precedents might be outmoded. See, e.g., State v. Carrero, 428 N.J. Super. 495, 511 (App. Div. 2012) (declining defendant's request that we reconsider the

13

Supreme Court's holding on the admissibility of Alcotest results); State v. Breitweiser, 373 N.J. Super. 271, 282-83 (App. Div. 2004) (recognizing that, as an intermediate appellate court, we are bound by the Supreme Court's holdings and dicta).

Without commenting here about the arguments raised in defendant's brief, we simply note that the appropriate forum to decide whether existing precedent about ballistics toolmark techniques should be altered is our Supreme Court. This is especially true here, where defendant failed to cite our decision in State v. McGuire, 419 N.J. Super. 88 (App. Div. 2011). In that case, we expressly rejected the defendant's attempt to categorically undermine the reliability of toolmark analysis. Id. at 130. Significantly, the Court denied certification. 208 N.J. 335 (2011).

## III.

Lastly, we consider defendant's argument that the trial judge imposed an excessive sentence by failing to properly assess aggravating factors three, the risk defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3); six, the extent and seriousness of defendant's prior record, N.J.S.A. 2C:44-1(a)(6); and nine, the need to deter defendant and others from violating the law, N.J.S.A.

2C:44-1(a)(9). Defendant does not, however, contend the trial court erred in failing to find any mitigating factors.

Sentencing determinations are reviewed on appeal with a highly deferential standard. State v. Fuentes, 217 N.J. 57, 70 (2014).

> The appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

Once the trial court has balanced the aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b), it "may impose a term within the permissible range for the offense." State v. Bieniek, 200 N.J. 601, 608 (2010); see also State v. Case, 220 N.J. 49, 65 (2014) (instructing that appellate courts may not substitute their judgment for that of the sentencing court, provided that the "aggravating and mitigating factors are identified [and] supported by competent, credible evidence in the record").

We do not find merit in defendant's contention the judge erred by relying on defendant's prior offense history as a basis for finding aggravating factors

three, six and nine.  Defendant contends the judge also erred in weighing those factors because it failed to consider the lack of severity of his prior offenses.  Curiously, defendant concedes the judge acceded to his request to redact portions of his prior history set forth in the presentence report.  He nonetheless urges us to review his sentence in light of the redactions, without citing any reference to the record indicating the judge considered the redacted statements when he sentenced defendant.

The law is well settled that a court may properly consider defendant's prior history of criminality to support findings of aggravating factors three, six and nine.  State v. Dalziel, 182 N.J. 494, 502 (2005).  Further, a sentencing court may consider: the length of a defendant's criminal record, irrespective of whether each offense resulted in a conviction, State v. Tanksley, 245 N.J. Super. 390, 397 (App. Div. 1991); convictions for relatively minor offenses, State v. T.C., 347 N.J. Super. 219, 244 (App. Div. 2003); and juvenile adjudications, State v. Jarbath, 114 N.J. 394, 412 n. 4 (1989).

Here, defendant's record demonstrates a lengthy and consistent history of violating the law.  As aptly summarized by the judge, defendant was twenty-four-years old at sentencing "with a juvenile record of [sixteen] arrests, one ordinance violation, one diversion, three adjudications and four [v]iolations of

[p]robation." Further, defendant's adult record included "a history of [twelve] arrests, two ordinance violations, three disorderly convictions, [and] one indictable conviction."

Defendant's record provided sufficient credible evidence supporting the judge's finding of aggravating factors three, six and nine. See State v. O'Donnell, 117 N.J. 210, 216 (1989) ("[A]n appellate court should not second-guess a trial court's finding of sufficient facts to support an aggravating or mitigating factor if that finding is supported by substantial evidence in the record."). Further, contrary to defendant's contention, in finding aggravating factor nine, the judge not only determined deterrence "applies in every case of this type" but also the judge expressly found "[d]efendant is a repetitive offender and needs specific deterrence."

In sum, the trial court properly identified and weighed the applicable aggravating and mitigating factors. Defendant was sentenced within the permissible range for a first-degree offender. Bieniek, 200 N.J. at 608. We perceive no abuse of discretion in the sentence imposed, which does not shock our judicial conscience. State v. Bolvito, 217 N.J. 221, 228 (2014).

17

Defendant's remaining arguments, to the extent we have not addressed them, lack merit sufficient to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2840-16T4