15-2220(L)
United States v. Sierra (Carlos Lopez)

# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2018
Nos. 15-2220(L), 15-2247(CON), 15-2257(CON)

UNITED STATES OF AMERICA,
Appellee,

v.

LEONIDES SIERRA, AKA SEALED DEFENDANT 1, AKA JUNITO, AKA JUNIOR, ET AL.,
Defendants,

CARLOS LOPEZ, AKA SEALED DEFENDANT 15, AKA CARLITO, LUIS BELTRAN, AKA
SEALED DEFENDANT 26, AKA GUALEY, FELIX LOPEZ-CABRERA, AKA SEALED
DEFENDANT 14, AKA SUZTANCIA,
Defendants-Appellants.

ARGUED: MAY 6, 2019
DECIDED: AUGUST 1, 2019

Before:     NEWMAN, JACOBS, DRONEY, Circuit Judges.

Carlos Lopez, Luis Beltran, and Felix Lopez-Cabrera appeal from a
judgment of the United States District Court for the Southern District of New
York sentencing them, inter alia, to mandatory minimum terms of life
imprisonment applicable to convictions for murder in aid of racketeering.   On
appeal, the defendants argue that because they were between 18 and 22 years old

1

when the murders were committed, a mandatory life sentence is cruel and unusual in violation of the Eighth Amendment. Lopez additionally argues that his mandatory life sentence is cruel and unusual because he did not kill, attempt to kill, or intend to kill the victims of his crimes.

Affirmed.

_____

> MATTHEW LAROCHE, Assistant United States Attorney (Micah W.J. Smith, Margaret Garnett, Assistant United States Attorneys, on the brief), United States Attorney's Office for the Southern District of New York, New York, NY, for Appellee.
>
> SUSAN GAIL KELLMAN, Law Offices of Susan G. Kellman, Brooklyn, NY (Ezra Spilke, Law Offices of Ezra Spilke PLLC, Brooklyn, NY, on the brief), for Appellant Carlos Lopez.
>
> DANIEL S. NOOTER (Lee Ginsberg, on the brief), Freeman, Nooter & Ginsberg, New York, NY, for Appellant Luis Beltran.[*]
>
> JESSE M. SIEGEL, Law Office of Jesse M. Siegel, New York, NY (Irving Cohen, Law Office of Irving Cohen, New York, NY, on the brief), for Appellant Felix Lopez-Cabrera.

---

[*] In addition to the brief prepared by his counsel, appellant Beltran also submitted a pro se brief.

2

DENNIS JACOBS, Circuit Judge:

Carlos Lopez, Luis Beltran, and Felix Lopez-Cabrera (the "defendants") appeal from a judgment of the United States District Court for the Southern District of New York (Engelmayer, J.) sentencing them, inter alia, to mandatory minimum terms of life imprisonment applicable to convictions for murder in aid of racketeering. On appeal, the defendants argue that because they were between 18 and 22 years old when the murders were committed, a mandatory life sentence is cruel and unusual in violation of the Eighth Amendment. Lopez additionally argues that his mandatory life sentence is cruel and unusual because he did not kill, attempt to kill, or intend to kill the victims of his crimes. The defendants' remaining arguments are adjudicated in a summary order filed today.

For the reasons explained below, the judgment of the district court is affirmed.

## BACKGROUND

The February 2013 indictment charged Lopez, Beltran, Lopez-Cabrera, and 36 co-defendants with dozens of counts arising out of their membership in the Bronx Trinitarios Gang, a racketeering enterprise engaged in drug trafficking and violent crime. The jury convicted the defendants of charges including (as relevant to this opinion) substantive and conspiracy counts of murder in aid of racketeering in violation of 18 U.S.C. § 1959.

Beltran and Lopez-Cabrera were convicted of substantive and conspiracy counts of murder of Raymond Casul in aid of racketeering. Trial evidence established that in March 2009 Lopez-Cabrera drove Beltran to an intersection in the Bronx where Beltran shot and killed Casul in retaliation for an earlier altercation between Casul and members of the Trinitarios. Lopez-Cabrera attempted to cover up the murder by, inter alia, hiding the murder weapon.

Lopez-Cabrera was convicted of murder of David Avila-Gomez in aid of racketeering. Trial evidence established that in September 2009 Lopez-Cabrera

led four fellow members of the Trinitarios in an attempt to rob Avila-Gomez of his cell phone while he was sitting on the steps of his home. When Avila-Gomez resisted, he was shot and killed by one of the Trinitarios.

Lopez and Lopez-Cabrera were convicted of conspiracy and substantive counts of murder of Raffy Tavares and Irving Cruz in aid of racketeering. Trial evidence established that in May 2010 Lopez and Lopez-Cabrera encountered Tavares and Cruz during a standoff between members of the Trinitarios and individuals believed to be members of a rival chapter of the Trinitarios. Lopez and Lopez-Cabrera chased Tavares and Cruz while Lopez-Cabrera fired shots that struck and killed Tavares and Cruz.

Finally, Lopez was convicted of conspiracy and substantive counts of murder of Freddy Polanco in aid of racketeering. The evidence established that in November 2010 Lopez agreed to retaliate against Polanco after he disrespected members of the Trinitarios, and that when Lopez and fellow Trinitarios came upon Polanco in the lobby of a building, one of the Trinitarios shot and killed him.

Prior to sentencing, the defendants submitted a joint motion arguing that it would be cruel and unusual in violation of the Eighth Amendment to impose mandatory minimum life sentences for the convictions for murder in aid of racketeering. The district court denied the motion, and imposed sentences that for each defendant included at least one mandatory minimum term of life imprisonment applicable to convictions for murder in aid of racketeering under 18 U.S.C. § 1959(a)(1).

## DISCUSSION

### A. Age-Based Arguments

Each defendant was between 18 and 22 years old at the times of the murders in aid of racketeering of which they were convicted. They argue on appeal that the mandatory minimum life sentences imposed for those convictions violate the Eighth Amendment, relying principally on Miller v.

4

<u>Alabama</u>, 567 U.S. 460 (2012).

<u>Miller</u> held "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments,'" <u>id.</u> at 465, because "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles," <u>id.</u> at 489.[1] The defendants argue that <u>Miller</u>'s holding should be extended to apply to them, because scientific research purportedly shows that the biological factors that reduce children's "moral culpability" likewise affect individuals through their early 20s.

The Supreme Court has acknowledged that "[d]rawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules," such as that "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18," and that "[b]y the same token, some under 18 have already attained a level of maturity some adults will never reach." <u>Roper v. Simmons</u>, 543 U.S. 551, 574 (2005). Nevertheless, "a line must be drawn," and the Supreme Court has repeatedly chosen in the Eighth Amendment context to draw that line at the age of 18, which "is the point where society draws the line for many purposes between childhood and adulthood." <u>Id.</u>; <u>see also</u> <u>Graham v. Florida</u>, 560 U.S. 48, 74-75 (2010); <u>United States v. Reingold</u>, 731 F.3d 204, 215 (2d Cir. 2013) (under <u>Miller</u>, courts may not "substitute the defendant's relative immaturity for the actual age of minority"). Since the Supreme Court has chosen to draw the constitutional line at the age of 18 for mandatory minimum life sentences, <u>Miller</u>, 567 U.S. at 465, the defendants' age-based Eighth Amendment challenges to their sentences must fail.

## B.     Lopez's Lesser Role Argument

The convictions for which Lopez was sentenced to a mandatory minimum life sentence were premised on <u>Pinkerton</u> liability. <u>See</u> <u>Pinkerton v. United</u>

---

[1] The life sentences in <u>Miller</u> were not subject to parole. <u>See</u> <u>Miller</u>, 567 U.S. at 466, 469. The defendants' federal life sentences were also not subject to parole, which was abolished by the Sentencing Reform Act of 1984, § 218(a)(5).

States, 328 U.S. 640 (1946).   Lopez argues that the sentence violates the Eighth Amendment because he did not commit the murders directly.   In support, he relies on Enmund v. Florida, which held that the Eighth Amendment categorically forbids "imposition of the death penalty on one . . . who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place."   458 U.S. 782, 797 (1982).

In challenging his mandatory minimum life sentence for murder imposed on a Pinkerton theory, Lopez is combining two distinct arguments.   One argument, which is not based on Enmund, is that the sentence is unconstitutional because it is mandatory.   His point is that a sentence of such severity imposed for Pinkerton liability is unconstitutional when it is made mandatory.   His second argument, which is based on Enmund, is that a sentence as severe as his is unconstitutional when imposed for accessory liability.

For different reasons, both arguments are foreclosed by Harmelin v. Michigan, 501 U.S. 957 (1991).   To the extent that Lopez is challenging the mandatory nature of his sentence, Harmelin provides a complete answer: "There can be no serious contention . . . that a sentence which is not otherwise cruel and unusual becomes so simply because it is 'mandatory.'"   Id. at 995; see also Miller, 567 U.S. at 480-81.   To the extent that Lopez seeks extension of Enmund to his non-capital life sentence, Harmelin also provides a complete answer when it says that "death is different," and that the Court's death penalty jurisprudence "will not [be] extend[ed] . . . further."   501 U.S. at 994.

But Lopez's second argument is by no means frivolous.   Harmelin was premised on the fact that, as of 1991, the "cases creating and clarifying the 'individualized capital sentencing doctrine' . . . repeatedly suggested that there is no comparable requirement outside the capital context, because of the qualitative difference between death and all other penalties."   Id. at 995.   We recognize that recent cases have arguably "jettison[ed] Harmelin's clear distinction between capital and noncapital cases," Miller, 567 U.S. at 508 (Thomas, J., dissenting): the Court has concluded that life-without-parole sentences "share some characteristics with death sentences that are shared by no other sentences,"

Miller, 567 U.S. at 474 (quoting Graham, 560 U.S. at 69); and Graham's holding treated "juvenile life sentences as analogous to capital punishment," Miller, 567 U.S. at 475 (quoting Graham, 560 U.S. at 89 (Roberts, Ch.J., concurring)).

Moreover, Miller's reliance on cases that categorically bar certain punishments for juveniles on the basis of juveniles' lesser culpability[2] could, by extension and analogy, support an individual sentencing requirement for adults who are convicted of murder, who face life without parole, but who did not kill, attempt to kill, or intend to kill. Enmund held (in the death penalty context) that such defendants' "culpability is plainly different from that of [defendants] who killed." 458 U.S. at 798. Miller's concern that juvenile mandatory life sentences "neglect[] the circumstances of the homicide offense, including the extent of [the defendant's] participation in the conduct," Miller, 567 U.S. at 477, might likewise bear upon sentencing for the class of defendants deemed less culpable under Enmund.

Nevertheless, despite the doubts expressed by the dissenting justices, the Miller majority expressly stated that it was not overruling Harmelin. Id. at 482. Lopez's argument is therefore foreclosed by Supreme Court precedent.[3]

## CONCLUSION

For the foregoing reasons, and for the reasons stated in the accompanying summary order filed today, we hereby **AFFIRM** the judgment of the district court.

---

[2] The Court relied on Roper, 543 U.S. 551 (capital punishment for juveniles violates Eighth Amendment), and Graham, 560 U.S. 48 (life without parole for juveniles who commit non-homicide offenses violates Eighth Amendment). Miller, 567 U.S. at 477.

[3] Accordingly, we need not address the government's argument that the jury verdict necessarily included a finding that Lopez intended that the murders be done.

7