18-328, 18-369
*United States v. Smith, Lopez*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 18th day of August, two thousand twenty.

Present:     DENNIS JACOBS,
             ROSEMARY S. POOLER,
             SUSAN L. CARNEY,
                     *Circuit Judges.*

---

UNITED STATES OF AMERICA,

                     *Appellee*,

              v.                                          18-328, 18-369

MATTHEW SMITH,
ISMAEL LOPEZ,

              *Defendants-Appellants.*[1]

Appearing for Appellant-Smith:       Jane S. Meyers, Brooklyn, N.Y.

Appearing for Appellant-Lopez        Maurice J. Verrillo, Rochester, N.Y.

---

[1] The Clerk of Court is directed to amend the caption as above.

Appearing for Appellee:                    Monica J. Richards, Assistant United States Attorney, *for* James P. Kennedy, United States Attorney for the Western District of New York, Buffalo, N.Y.

Appeal from the United States District Court for the Western District of New York (Arcara, *J.*).

     **ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment be and it hereby is **AFFIRMED**.

     Defendants-Appellants Matthew Smith and Ismael Lopez appeal from final judgments entered November 2, 2017 and February 5, 2018, respectively, in the United States District Court for the Western District of New York (Arcara, *J.*), sentencing them principally to life imprisonment. We decide by separate opinions the appeals of Smith and Lopez's codefendants, Jonathan Delgado and Domenico Anastasio. Following a jury trial, Smith and Lopez were each convicted of one count of conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") with special sentencing factors charging the aiding and abetting of two murders ("murder enhancements"), in violation of 18 U.S.C § 1962(d); two counts of murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2 ("VCAR-murder counts"); one count of conspiracy to possess with intent to distribute narcotics ("narcotics-conspiracy count"), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846; and one count of possession of firearms in furtherance of a drug-trafficking crime ("firearms-possession count"), in violation of 18 U.S.C. §§ 924(c)(1) and 2. Smith was also convicted of one count of participating in the affairs of a racketeering enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c); and two counts of possession of heroin with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

     On appeal, both defendants attack their convictions on sufficiency-of-the-evidence grounds and advance age-based challenges to their mandatory life sentences. Additionally, Lopez argues that the district court erred in denying his supplemental motion for a post-trial hearing, and Smith argues that he received ineffective assistance of counsel. We address these arguments in turn.[2]

---

[2] On appeal, all four defendants argued that during jury selection the government exercised its preemptory strikes on the basis of race when it struck a woman of Hispanic origin from the venire. As we explain in an opinion resolving Delgado's appeal, the district court did not clearly err in crediting the government's statement of its nondiscriminatory reasons for striking the prospective juror. *See United States v. Farhane*, 634 F.3d 127, 154 (2d Cir. 2011) ("Such a ruling represents a finding of fact, which we will not disturb in the absence of clear error."). We now adopt and incorporate that *Batson* analysis here, reaffirming that the record before us discloses no basis for disturbing the district court's *Batson* determination.

## I.     Sufficiency of the Evidence

A defendant challenging the sufficiency of the evidence bears a "heavy burden," *United States v. Gaskin*, 364 F.3d 438, 459 (2d Cir. 2004) (internal quotation marks and citation omitted), as the standard of review is "exceedingly deferential," *United States v. Hassan*, 578 F.3d 108, 126 (2d Cir. 2008). Ultimately, "the task of choosing among competing, permissible inferences is for the [jury], not for the reviewing court." *United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001). "In evaluating a sufficiency challenge, we must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. Martoma*, 894 F.3d 64, 72 (2d Cir. 2017) (internal quotation marks and citation omitted).

### A.  Smith

Smith challenges the sufficiency of the evidence for the murder enhancements and the VCAR-murder counts. In pertinent part, the VCAR murder statute, 18 U.S.C. § 1959(a), requires not only that Smith possessed the mens rea for murder, but also that he acted with the general purpose of maintaining or increasing his status within the gang. *See United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011). Smith argues that, under this record, it was irrational for the jury to conclude that he possessed the intent to kill and that he did so to further his status in the gang.

We disagree. Regarding Smith's intent to kill, the government introduced testimony at trial that Smith (1) told other gang members that he would drive around the neighborhood to locate members of the rival 7th Street Gang; (2) did in fact drive around the neighborhood and reported back that he located 7th Street Gang members, stating "they're out there" and "do what you all gotta do," Smith App'x at 2465.48; (3) at some point returned to the apartment where the murders were planned and where the murder weapons were piled on top of a bed; (4) after Smith called in his observation, he told a fellow gang member that was with him, the "boys were going to retaliate" for the earlier shooting, Smith App'x at 2770; and (5) after gunshots were heard, Smith told a fellow gang member that the victims "got what they deserved," Smith App'x at 2782. Based on this evidence, a jury could reasonably conclude beyond a reasonable doubt that Smith possessed the mental state for the murders—an entirely foreseeable consequence of his reports to a group bent on lethal retaliation. *See United States v. Nelson*, 277 F.3d 164, 197 (2d Cir. 2002) (holding that a jury may infer that "a person intends the ordinary consequences of his voluntary acts").

It was also reasonable for the jury to conclude that Smith acted with the general purpose of maintaining or increasing his position in the gang when he volunteered to look for rivals at a time when his fellow members talked openly about retaliation. There was evidence demonstrating that Smith understood that the gang valued taking action when retaliatory efforts were underway: in one instance, when two other gang members were arguing over which one would shoot at rival gang members, Smith grabbed the gun and darted off on a bicycle to shoot at the rival members himself. That Smith later participated in beating a suspected associate of the 7th Street Gang near a gathering of 10th Street Gang members further supports the jury's finding that Smith acted with a desire to increase his position in the gang. Viewing this evidence in the

light most favorable to the government, along with other evidence presented at trial showing as a general matter that the organization placed value on members committing violent acts on behalf of the gang, we decline to disturb Smith's convictions on the VCAR-murder counts.

## B. Lopez

Lopez similarly attacks the sufficiency of the evidence of his mental state for the murder enhancements and the VCAR-murder counts. Lopez argues that "[t]he mere driving of a motor vehicle with occupants, even if this were true, does not establish the requirements of accessorial liability, prove knowledge or intent to commit the substantive offense beyond a reasonable doubt." Appellant's Br. at 34. We do not agree.

The trial testimony established that Lopez was more than just a mere driver of a motor vehicle with occupants. There was testimony that Lopez (1) joined other gang members at the apartment where they stockpiled firearms and planned the murders; (2) drove a lookout to a place near the scene of the murders; and (3) later drove four armed gang members to the scene where one of the shooters "took [his] shotgun and put it on the back seat of the floor." Smith App'x at 2926. The jury did not unreasonably conclude from this that Lopez knew that the plan was to kill rival gang members, and Lopez intentionally aided his codefendants by transporting them to the location when they were fully armed and ready, willing, and able to shoot and kill.

Furthermore, viewing the evidence in the light most favorable to the government, the jury did not irrationally conclude that Lopez acted with the general awareness to increase his status in the gang. Contrary to Lopez's assertion that the "[t]he record at trial established at best that [Lopez] was a small time seller of marijuana," Appellant's Br. at 36, there was testimony showing that Lopez had already advanced through the ranks as a drug seller and as someone known to possess a .38 revolver, which he would bring with him to 10th Street Park and show other members. There was also testimony that newer members were expected to "put in work," meaning they had to perform certain criminal—and often violent— acts to increase their status. Smith App'x at 2360.

Lopez also argues that there was insufficient evidence to convict him of the narcotics-conspiracy count, but this challenge also fails. Trial testimony established Lopez's guilt as a drug supplier who sold marijuana from his house. For example, there was testimony that one drug supplier sold Lopez more than 100 pounds of marijuana and that another gang member bought more than 60 pounds of marijuana from Lopez. This testimony is enough to defeat the sufficiency argument as to this count.

Finally, Lopez's attack on the sufficiency of the evidence underlying his conviction for the firearms-possession count is also meritless. Trial testimony established that Lopez brought a firearm to the 10th Street Park to provide protection for the gang while selling drugs there. Such evidence is sufficient for a jury reasonably to have found Lopez guilty on the firearms-possession count.

## II. Sentencing

Defendants' age-based challenges to their mandatory life sentences are foreclosed by our recent decision in *United States v. Sierra*. 933 F.3d 95, 97 (2d Cir. 2019) ("Since the Supreme Court has chosen to draw the constitutional line at the age of 18 for mandatory minimum life sentences, the defendants' age-based Eighth Amendment challenges to their sentences must fail." (citation omitted)). We are "bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court." *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004). Smith and Lopez were both over eighteen years old at the time of the VCAR-count murders, which carry a mandatory-minimum sentence of life imprisonment. Accordingly, we affirm their sentences.

## III. Motion for Post-Verdict Hearing

Additionally, we conclude that the district court acted well within the bounds of its discretion in denying Lopez's motion for a post-verdict hearing. After his trial, Lopez submitted letters from some of the testifying witnesses purporting to recant portions of their prior testimony that incriminated Lopez. The district court is accorded great deference in its decision to grant a hearing in such circumstances, especially when, as here, it presided over the trial in which the recanting witnesses testified. *See United States v. DiPaolo*, 835 F.2d 46, 51 (2d Cir. 1987) ("When a motion for a new trial is predicated entirely on an affidavit from a trial witness who recants her testimony, a trial judge can ordinarily deny it without a hearing.").

## IV. Ineffective Assistance of Counsel

Finally, Smith also argues that his counsel was constitutionally ineffective for not filing a sentencing statement. Our Circuit has "a baseline aversion to resolving ineffectiveness claims on direct review." *United States v. Khedr*, 343 F.3d 96, 99 (2d Cir. 2003) (internal quotation marks and citation omitted). Though we have exercised our discretion to address these claims when their resolution is beyond a doubt, *id.*, we decline to do so here given the absence of a fully developed record on this issue. *See Sparman v. Edwards*, 154 F.3d 51, 52 (2d Cir. 1998) (explaining that, "except in highly unusual circumstances," a lawyer charged with ineffectiveness should be given "an opportunity to be heard and to present evidence, in the form of live testimony, affidavits, or briefs"). Accordingly, we dismiss Lopez's ineffective assistance of counsel claims without prejudice.

We have considered the remainder of Lopez and Smith's arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk