NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3911-21
     A-1264-22
     A-1358-22

STATE OF NEW JERSEY,

  Plaintiff-Respondent,

v.

SEAN JONES,

  Defendant-Appellant.

_____

STATE OF NEW JERSEY,

  Plaintiff-Respondent,

v.

RICHARD ROCHE,

  Defendant-Appellant.

_____

STATE OF NEW JERSEY,

  Plaintiff-Respondent,

v.

TIMOTHY HARRIS,

APPROVED FOR PUBLICATION

May 31, 2024

APPELLATE DIVISION

Defendant-Appellant.

Argued (A-3911-21) and Submitted (A-1264-22 and A-1358-22) April 30, 2024 – Decided May 31, 2024

Before Judges Sumners, Rose and O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 88-07-2659 and 92-12-4339; and Camden County, Indictment No. 96-02-0526.

Peter Thomas Blum, Assistant Deputy Public Defender, argued the cause for appellant Jones in A-3911-21 (Jennifer Nicole Sellitti, Public Defender, attorney; Peter Thomas Blum, of counsel and on the briefs).

Jennifer Nicole Sellitti, Public Defender, attorney for appellant Roche in A-1264-22 and appellant Harris in A-1358-22 (Michael Timothy Denny and Morgan A. Birck, Assistant Deputy Public Defenders, of counsel and on the briefs).

Hannah Faye Kurt, Assistant Prosecutor, argued the cause for respondent in A-3911-21 (Theodore N. Stephens, II, Essex County Prosecutor, attorney; Hannah Faye Kurt, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent in A-1264-22 (Steven A. Yomtov, Deputy Attorney General, of counsel and on the brief).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent in A-1358-22 (Lucille M. Rosano, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

ROSE, J.A.D.

These three appeals, calendared back-to-back and consolidated for purposes of our opinion, raise similar issues requiring us to decide whether: (1) our Supreme Court's decision in State v. Comer, 249 N.J. 359 (2022), should extend to youthful offenders between the ages of eighteen and twenty when they committed their offenses; and (2) the motion courts should have assigned counsel rather than denying defendants' pro se applications without a hearing. After their direct appeals and post-conviction relief (PCR) applications were exhausted, defendants Sean Jones, Timothy Harris, and Richard Roche – all adults between the ages of eighteen and twenty when they committed murder in the late 1980s and early 1990s – filed pro se applications pursuant to Rule 3:21-10, arguing their lengthy sentences should receive the same constitutional protection as juvenile offenders prosecuted and convicted as adults. Because they served more than twenty years' imprisonment, defendants claim entitlement to resentencing under the same rationale espoused by the Comer majority. Alternatively, defendants seek a remand for a plenary hearing with assignment of counsel.

A-3911-21

Having considered defendants' contentions in view of the governing law, we reject their constitutional arguments under Comer and conclude the motion courts properly decided their applications without assignment of counsel. Accordingly, we affirm the orders under review.

I.

A.

We begin by summarizing the guiding legal principles to give context to defendants' contentions. Commencing in 2005, the United States Supreme Court changed the landscape for juvenile offenders, that is, those individuals who were under the age of eighteen when they committed their crimes. Citing the Eighth Amendment's cruel and unusual punishment clause, the Court in Roper v. Simmons, 543 U.S. 551, 568 (2005), eliminated the death penalty for juvenile offenders.

Five years later, the Court prohibited the sentencing of juvenile offenders to life imprisonment without parole for non-homicide crimes. Graham v. Florida, 560 U.S. 48, 82 (2010). In Graham, the Court determined a sentencing court may not make the determination "at the outset" that the juvenile will forever pose a risk to society. Id. at 75. Instead, the juvenile must have "some meaningful opportunity to obtain release based on demonstrated maturity and

A-3911-21

rehabilitation." Ibid. The Court left the "means and mechanisms for compliance" with its decision to the States. Ibid.

In 2012, the Court prohibited sentencing schemes "mandat[ing] life in prison without possibility of parole for juvenile offenders," while leaving open the possibility that sentencing courts could impose such a sentence in homicide cases if the mitigating effect of the defendant's age is properly considered. Miller v. Alabama, 567 U.S. 460, 479-80 (2012). In Miller, both petitioners were fourteen years old when they committed murder. Id. at 465, 467.

Referencing its decisions in Roper and Graham, the Court in Miller recognized, "the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." Id. at 472. The Court further stated, "the characteristics of youth, and the way they weaken rationales for punishment, can render a life-without-parole sentence disproportionate." Id. at 473.

In 2016, the Court gave its decision in Miller retroactive application and held where a sentence was imposed contrary to Miller, the constitutional infirmity could be remedied by resentencing or consideration for parole. Montgomery v. Louisiana, 577 U.S. 190, 212 (2016). The Court explained: "Allowing those offenders to be considered for parole ensures that juveniles

whose crimes reflected only transient immaturity – and who have since matured – will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." Ibid.

In 2017, one year after Montgomery was decided, our Supreme Court considered the lengthy sentences imposed on two seventeen-year-old offenders, who were tried and convicted as adults in separate matters. State v. Zuber, 227 N.J. 422, 430, 433 (2017). Ricky Zuber was sentenced to an aggregate sentence of 110 years' imprisonment with a 55-year parole ineligibility term following his convictions for kidnapping, robbery, aggravated sexual assault, and related offenses for his participation in two gang rapes. Id. at 430-32. James Comer was sentenced to an aggregate prison term of seventy-five years with a parole ineligibility term of sixty-eight years and three months for his involvement in four armed robberies, resulting in the shooting death of the victim. Id. at 433. Both defendants, joined by amici curiae, challenged the constitutionality of their sentences, contending their lengthy prison terms did not reflect the mitigating effects of youth and amounted to life without parole. Id. at 434-37.

Persuaded by these contentions, the Zuber Court held judges must "take into account how children are different," and consider the factors enumerated in Miller, 567 U.S. at 477-80, before sentencing juvenile offenders to life

imprisonment without the possibility of parole or its practical equivalent. Zuber, 227 N.J. at 451 (quoting Miller, 567 U.S. at 480). These factors include "immaturity and 'failure to appreciate risks and consequences'; 'family and home environment'; family and peer pressures; 'an inability to deal with police officers or prosecutors' or the juvenile's own attorney; and 'the possibility of rehabilitation.'" Id. at 429 (quoting Miller, 567 U.S. at 477-78).

In a narrow four-to-three decision issued five years after Zuber, our Supreme Court held juvenile offenders – prosecuted as adults and convicted of murder – are constitutionally entitled to reconsideration of their sentences after twenty years' imprisonment. Comer, 249 N.J. at 369-70. In Comer, the Court considered the resentencing of James Comer to a mandatory minimum prison term of thirty years, following the Court's remand instructions in Zuber, 227 N.J. at 453. The Court also considered James Zarate's companion case. Id. at 374-81. Zarate committed murder when he was fourteen years old and, following a remand by this court, was resentenced to life imprisonment, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. Id. at 374, 376-77.

Generally citing the United States Supreme Court's decisions in Miller, Graham, and Roper, the Comer Court recognized: "[C]hildren are different. They lack maturity and are more vulnerable to outside pressures than adults."

Id. at 394 (citing Roper, 543 U.S. at 569).  Further, "[t]hey can be impetuous and fail to appreciate risks and consequences."  Ibid. (citing Miller, 567 U.S. at 477).  "In the context of life without parole, the [United States] Supreme Court therefore observed that states 'must . . . give [juveniles] some meaningful opportunity to' demonstrate their 'maturity and rehabilitation' 'to obtain release.'"  Id. at 395 (quoting Graham, 560 U.S. at 75) (second alteration in original).

In reaching its decision, the Court in Comer examined adolescent behavioral science articles, explaining many youths do not reach maturity until years after they turn eighteen.  Id. at 399-400.  The Court noted one scientist opined in a 2013 article, "adolescents and individuals in their early 20s are more likely than either children or somewhat older adults to engage in risky behaviour."  Id. at 399 n.5 (quoting Laurence Steinberg, The Influence of Neuroscience on U.S. Supreme Court Decisions about Adolescents' Criminal Culpability, 14 Nature Revs. Neuroscience 513, 515 (2013)).  Generally citing authority referenced in Miller, the Court stated, "as to rehabilitation, a child's brain matures as the child grows older, including parts of the brain involved in impulse control."  Id. at 400 (citing Miller, 567 U.S. at 472 n.5).

The Court then created a procedure for offenders – who were juveniles when they committed their offenses – to seek a hearing after serving at least

8

twenty years in prison.  Id. at 401.  Under those discrete circumstances, on resentencing, the court must assess the "series of factors the United States Supreme Court set forth in Miller . . . which are designed to consider the 'mitigating qualities of youth.'"  Ibid. (quoting Miller, 567 at 476-78).  The court also should consider "whether the juvenile offender still fails to appreciate risks and consequences"; "whether [the juvenile offender] has matured or been rehabilitated"; and "the juvenile offender's behavior in prison since the time of the offense."  Comer, 249 N.J. at 370; see also Zuber, 277 N.J. at 451-52.

Relatedly, effective October 19, 2020, the Legislature enacted a new mitigating sentencing factor, applicable when:  "The defendant was under 26 years of age at the time of the commission of the offense."  N.J.S.A. 2C:44-1(b)(14).  In State v. Lane, 251 N.J. 84, 87 (2022), our Supreme Court held mitigating factor fourteen applies prospectively.

After the Court's decision in Comer, resentencing applications have been filed in various vicinages by offenders who – unlike Comer and Zarate – were adults when they committed their crimes and are serving life imprisonment terms, their equivalent, or otherwise lengthy sentences.  Some offenders raised Comer issues on direct appeal, see, e.g., State v. Wilkins, No. A-0924-20 (App. Div. July 26), certif. denied, 255 N.J. 413 (2023), or following remand for

9

resentencing, <u>see, e.g.</u>, <u>State v. Erazo</u>, No. A-4408-18 (App. Div. Oct. 12, 2023), <u>certif. denied</u>, 256 N.J. 527 (2024). Others filed pro se motions to correct an illegal sentence after their PCR applications were exhausted. <u>See, e.g.</u>, <u>State v. Barkley</u>, No. A-2505-21 (App. Div. Nov. 16, 2023) <u>certif. denied</u>, 256 N.J. 517 (2024). Some movants were afforded counsel on their <u>Comer</u> applications. <u>See, e.g.</u>, <u>State v. Cain</u>, No. A-0538-21 (App. Div. July 7) (slip op. at 4), <u>certif. denied</u>, 255 N.J. 382 (2023).

All applications were denied by the motion courts, affirmed by this court in unpublished opinions,[1] and our Supreme Court has not granted certification on these unsuccessful <u>Comer</u> resentencing applications. Notably, in at least two cases, the Court granted the motion of the American Civil Liberties Union of New Jersey, and other interested groups, for leave to appear as amici curiae on the same date that it denied certification. <u>See e.g.</u>, <u>State v. Cain</u>, 255 N.J. 391 (2023); <u>State v. Barkley</u>, 256 N.J. 523 (2024).

B.

Pertinent to the present appeals, applications for the reduction or change of sentence are governed by <u>Rule</u> 3:21-10. Ordinarily such applications must

---

[1] "Although citing an unpublished opinion is generally forbidden, [<u>see</u> <u>R.</u> 1:36-3], we do so here to provide a full understanding of the issues presented." <u>Zahl v. Hiram Eastland, Jr.</u>, 465 N.J. Super. 79, 86 n.1 (App. Div. 2020).

be filed within sixty days of issuance of the judgment of conviction (JOC), and the trial court must enter an order "on motion or on its own initiative" within seventy-five days of the JOC's issuance.  R. 3:21-10(a).  However, the rule provides exceptions for seven categories of applications.  R. 3:21-10(b)(1) to (7).  Relevant here, "an order may be entered at any time . . . changing a sentence as authorized by the Code of Criminal Justice [(Criminal Code)]," R. 3:21-10(b)(4), or "correcting a sentence not authorized by law including the [Criminal Code]," R. 3:21-10(b)(5), otherwise known as an illegal sentence.

"There are two categories of illegal sentences:  those that exceed the penalties authorized for a particular offense, and those that are not authorized by law."  State v. Hyland, 238 N.J. 135, 145 (2019).  "Those two categories of illegal sentences have been 'defined narrowly.'"  Ibid. (quoting State v. Murray, 162 N.J. 240, 246 (2000)).  A sentence that is "not imposed in accordance with law" "includes a sentence 'imposed without regard to some constitutional safeguard.'"  Zuber, 277 N.J. at 437 (first quoting Murray, 162 N.J. at 247; and then quoting State v. Tavares, 286 N.J. Super. 610, 618 (App. Div. 1996)).  There is no temporal limit on a court's ability to review an illegal sentence; "it may be corrected at any time before it is completed."  Murray, 162 N.J. at 247; see also R. 3:21-10(b).

11

"We review the legality of a sentence de novo." State v. Steingraber, 465 N.J. Super. 322, 327 (App. Div. 2020). "If a defendant's sentence is illegal, a reviewing court must remand for resentencing." Ibid. (citing State v. Romero, 191 N.J. 59, 80-81 (2007)).

## II.

Against that legal backdrop, we summarize the facts and procedural history underpinning each appeal from the record before the motion courts.

### A. Jones

Tried to a jury, Jones was convicted of murder and related weapons offenses for his involvement in the 1987 shooting death of Eric Smith hours after Smith cheated Jones during a drug deal in Newark. State v. Jones, No. A-4491-88 (App. Div. Dec. 6, 1990) (slip op. at 2). Three State witnesses, including Smith's mother, testified at trial that during the hours leading to the victim's death, Jones declared his intention to kill Smith. Id. at 2. The State's theory at trial was that Jones directed his co-defendant, Rodwell Walsh, to shoot Smith. Id. at 3. However, Walsh testified after he walked away from Jones and Smith, he heard shots and saw "somethin' in [Jones]'s hand." Id. at 4. The jury convicted Jones, but acquitted Walsh. Ibid. Jones was eighteen years old when he killed Smith.

Jones initially was sentenced to a fifty-year prison term with a thirty-year parole ineligibility period.[2] Id. at 1. On direct appeal, we affirmed Jones's convictions, but remanded for resentencing and a statement of reasons regarding the imposition of a fifty-year base term on the murder conviction. Id. at 6. On remand, the court resentenced Jones to a thirty-year prison term with a thirty-year parole disqualifier.

Jones thereafter filed several PCR applications, all of which were denied and affirmed on appeal. State v. Jones, No. A-2817-96 (App. Div. Dec. 18, 1998), State v. Jones, No. A-3279-00 (App. Div. February 25, 2003); State v. Jones, No. A-1774-08 (App. Div. July 22, 2009); State v. Jones, No. A-3642-18 (App. Div. Oct. 26, 2020). Jones also filed a petition for writ of habeas corpus, which was denied. Jones v. Sherrer, No. 04-2888 (D.N.J. Apr. 26, 2006).

In July 2022, Jones moved pro se in the Essex Vicinage pursuant to Rule 3:21-10(b)(5), to correct an illegal sentence, contending he was entitled to the same "lookback" resentencing as juvenile offenders pursuant to the Court's

---

[2] Shortly thereafter, Jones pled guilty to aggravated manslaughter amended from murder, conspiracy to commit robbery, robbery, and weapons offenses, charged in an unrelated Essex County indictment for shooting a street vendor during a robbery. Jones was sentenced to an aggregate thirty-year prison term, with a fifteen-year parole bar; the ten-year prison term with a five-year parole disqualifier was imposed consecutively to his sentence at issue in this appeal.

decision in <u>Comer</u>.[3]  In his fifteen-page brief, Jones cited numerous scientific articles, arguing the developmental science recognizes no meaningful cognitive differences between juveniles and young adults, and as such, New Jersey should extend <u>Comer</u>'s holding through at least age twenty.  Jones also cited, as "a persuasive case," the Washington Supreme Court's then-recent decision in <u>In re Monschke</u>, 482 P.3d 276 (Wash. 2021), and argued that Court considered the developmental science and held offenders between the ages of eighteen and twenty sentenced to life imprisonment were entitled to the same protection as juveniles.  <u>See</u> <u>id.</u> at 287.

Jones argued he was "truly a perfect illustration of the developmental science," claiming "if" he "commit[ted] this act by his own hand, it was an impulsive act."  Jones requested a "remand[] for resentencing, with counsel assigned by the [Office of the Public Defender (OPD)]."  As an alternative to resentencing, Jones sought a "remand for a hearing to consider expert testimony on the age-crime curve, the developmental science, and the neuroscience" so the court could "decide if the <u>Comer</u> lookback should extend to eighteen to twenty-year-olds."

---

[3]  Although Jones's argument was limited to the legality of his sentence, his description of the testimony adduced at trial is far from an acknowledgment of his part in Smith's murder.

On July 29, 2022, the motion judge entered an order and written decision, denying Jones's motion. In his cover letter to Jones, the judge succinctly summarized his statement of reasons, noting Jones was eighteen years old when his crime was committed and explaining "the Court's decision in Comer is limited to juveniles." The judge stated Jones's sentence was "authorized by law"; within "the appropriate range for the crime"; and upheld following numerous post-conviction challenges.

In his thoughtful statement of reasons, the judge recognized Jones's motion was "a pro se filing" and explained the only illegality alleged was a request for resentencing pursuant to Comer. The judge further found Jones's application presented "questions of law that c[ould] be addressed on undisputed facts related to [his] age when he committed the crimes." Citing Rule 3:21-10(c), the judge determined a hearing was not required "in the interest of justice."

The motion judge detailed Jones's assertions in view of the governing law – and the Washington Supreme Court's decision in Monschke. The judge concluded our "Supreme Court has not extended its holdings under the State Constitution to require a sentencing court's application of the Miller youth factors to adult offenders." Recognizing the Comer Court considered scientific

articles, which "explain[ed] why many youths do not reach maturity for years until after their eighteenth birthdays . . . the Court's holding was plainly limited to juveniles."  The judge elaborated:

> If a further constitutional expansion is warranted, it is not a trial court's place in the face of binding precedent to make such new case law.  Also, as with the enactment of mitigating factor fourteen, [N.J.S.A. 2C:44-1(b)(14)], the Legislature has the law-making power to statutorily address older convictions such as this one, should it choose to do so as a matter of policy.

Born in August 1969, Jones was fifty-three years old and had served thirty-six years in prison at the time of the motion judge's decision.  The OPD filed a timely appeal on his behalf.

## B.  Harris

Following a jury trial, Harris was convicted of murder, conspiracy to commit robbery, robbery, aggravated assault, and unlawful possession of a handgun for his part in the 1992 shooting death of Audrey Williamson during the commission of a robbery.  State v. Harris, No. A-5914-92 (App. Div. Feb. 6, 1996) (slip op. at 1-3).  Harris and his co-defendant trailed Williamson and Robert Lee Rose into a store in Newark.  Id. at 2.  Harris demanded money from the victims at gunpoint.  Ibid.  Fearful, Williamson attempted to gain cover

behind the store counter, but Harris shot her in the head from about three feet away. Id. at 2-3. Harris was eighteen years old at the time of his crime.[4]

Harris ultimately was sentenced to an aggregate prison term of life with a forty-year period of parole ineligibility. Id. at 2. On direct appeal, we affirmed Harris's convictions and sentence. Id. at 8. We glean from the record Harris's ensuing PCR petition was denied in January 1999.[5]

In August 2022, Harris moved pro se in the Essex Vicinage for reduction of his sentence under Rule 3:21-10(b)(4). Citing the Court's decisions in Zuber and Comer, Harris argued "late teens and emerging adults serving lengthy sentences should be provided the same opportunity" as juvenile offenders. Harris sought a hearing and the appointment of counsel.

The same judge who rejected Jones's claims also denied all claims for relief raised by Harris. In a December 8, 2022 order and accompanying statement of reasons, the judge determined a hearing with assignment of counsel

---

[4] In his pro se Comer application, Harris claimed he was nineteen years old, but the motion judge recognized Harris's judgment of conviction and presentence report clarified he was eighteen years old when he committed the offense and nineteen when he was sentenced. Notwithstanding the point headings in Harris's merits brief, his appellate counsel acknowledges Harris was eighteen years old at the relevant time.

[5] The parties did not recite the subsequent procedural history regarding defendant's PCR application.

A-3911-21

was not required because the facts were undisputed and Harris's claims presented questions of law.  Noting "appointment of counsel [wa]s discretionary and requires a showing of good cause," the judge reasoned under an analogous rule, "'good cause' has been described as limited to circumstances where the court finds 'a substantial issue of fact or law' that signals some merit in the petition."  See R. 3:22-6(b) (providing assignment of counsel for a second or subsequent PCR petition shall only be made upon a "showing of good cause"); Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 3:22-6(b) (2024).

The judge thoroughly analyzed Harris's contentions in light of the "recent legislative and case law developments recognizing the impact of youth on the commission of crimes and prospects for rehabilitation."  Recognizing the court may consider an application for reduction of sentence pursuant to Rule 3:21-10(b)(4), only after the movant's mandatory period of parole ineligibility has been served – and Harris's "current parole eligibility date is December 5, 2032" – the judge nonetheless addressed Harris's contentions under mitigating factor fourteen, as akin to an illegal sentencing argument under Rule 3:21-10(b)(5), and pursuant to the Court's holding in Comer.

Pertinent to Harris's appeal, the motion judge referenced the scientific articles cited by the Comer Court, but concluded:  "Because [Harris] was an

adult when he committed his crimes, his sentence does not raise the constitutional concerns outlined in <u>Roper</u>, <u>Graham</u>, <u>Miller</u>, <u>Zuber</u>, and <u>Comer</u>, related to juvenile sentencing and these cases do not apply." The judge thus concluded "[Harris] is not entitled to the special considerations afforded juveniles nor resentencing."

Born in May 1974, Harris was forty-eight years old and had served twenty-nine years in prison at the time of the motion judge's decision. The OPD filed a timely appeal on his behalf.

### C. Roche

Hired to kill a police informant for $5,000, Roche shot and killed Eric Coleman on Christmas Eve in 1994, after traveling to Camden from Puerto Rico. <u>State v. Roche</u> (<u>Roche I</u>), No. A-0095-05 (App. Div. June 19, 2007) (slip op. at 2-3). Roche thereafter pled guilty to first-degree murder. <u>Id.</u> at 3. In his factual basis supporting his guilty plea, Roche acknowledged he stood "in front of the victim" and fired a pistol about "five or six times," killing Coleman.

Pursuant to the terms of the negotiated plea agreement, Roche was sentenced to life imprisonment with a thirty-year parole bar, imposed concurrently with the 600-month federal sentence he was serving for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-

1969, and his capital murder and weapons charges were dismissed. Id. at 2; see also Roche v. United States, No. 07-2374 (D.N.J. July 20, 2009).

We affirmed Roche's sentence on direct appeal. See Roche I, slip op. at 3. We also affirmed the denial of Roche's first PCR petition. Id. at 1. His second PCR petition "was dismissed as untimely pursuant to Rule 3:22-4 because it was filed more than one year after the prior petition." State v. Roche (Roche II), No. A-2135-20 (App. Div. Jan. 18, 2023) (slip op. at 4).

More recently in 2023, we rejected Roche's claims raised in his "motion for a change of sentence alleging prosecutorial error, seeking to withdraw his plea and resentencing him to time served," ibid., as "precluded under the law-of-the-case doctrine," id. 8, because they had been raised in Roche's PCR petition, id. at 3. We also discerned no merit in Roche's argument that resentencing was required for application of mitigating factor fourteen. Id. at 8-9.

In September 2022, Roche moved pro se in the Camden Vicinage for reduction of his sentence, see R. 3:21-10(b)(4), and appointment of counsel, see R. 3:21-10(c). Similar to Jones and Harris, in his accompanying letter brief, Roche argued the same scientific research underscoring the Court's decision in Comer warranted his resentencing.

Asserting he was "a perfect illustration of the developmental science," Roche claimed "the offense was an impulsive act committed under the influence of peer pressure" and he now "is a model prisoner," who has attained a high school diploma, enrolled in college classes and "several programs specific to his crime," including "Behavior Modification, Focus on the Victim, and Successful Employment and Lawful Living." He also completed substance abuse programs and was actively involved in religious studies. Roche supported his application with copies of certificates earned while incarcerated. Alternatively, Roche sought a "remand for a hearing to consider expert testimony on the age-crime curve, the developmental science, and the neuroscience, and to decide if the Comer look[]back should extend to twenty-year-olds."

In a November 9, 2022 order and accompanying written decision, the motion judge denied Roche's application. The judge thoroughly considered Roche's constitutional argument under Comer and the scientific articles cited, but found his sentence was not illegal. Simply stated, the judge reasoned, "the Comer Court did not contemplate extending the lookback period to those who were not juveniles at the time of the offense." The judge did not address Roche's request for counsel.

Born in November 1974, Roche was forty-eight years old and had served twenty-four years in prison at the time of the motion judge's decision. The OPD filed a timely appeal on his behalf.

## III.

### A.

Defendants acknowledge the offenders in Comer were juveniles when they committed murder. See 249 N.J. at 371, 374. Nonetheless, they argue our Supreme Court relied on scientific articles that explain why many youths do not reach maturity until years after they turn eighteen and, as such, that science is applicable to their applications.

Defendants seek immediate resentencing. Alternatively, Roche seeks a remand for assignment of counsel and a rehearing on his application. Jones and Harris argue a remand is necessary for appointment of counsel and a testimonial hearing for the motion court to consider expert testimony concerning the developmental science as it applies to eighteen-year-old offenders.

In their merits briefs, defendants cite decisions from the highest courts in Washington and Michigan, urging us to conclude our state should follow suit and similarly hold youthful offenders under the age of twenty-one are entitled to resentencing under Comer. See Monschke, 482 P.3d at 288 (holding the

22

prohibition on life without parole sentences for juveniles under <u>Miller</u> extends to twenty-year-old individuals); <u>People v. Parks</u>, 987 N.W.2d 161, 182-83 (Mich. 2022) (extending <u>Miller</u> to eighteen-year-old offenders, who "share the same mitigating characteristics of youth as juveniles").

In its responding briefs in all three matters, the State counters – unlike defendants in the present matters – the defendants in <u>Monschke</u> and <u>Parks</u> were sentenced to mandatory prison terms of life without parole. <u>Monschke</u>, 482 P.3d at 277; <u>Parks</u>, 987 N.W.2d at 164. Additionally, in its response to the out-of-state authority espoused by Jones and Harris, the State cites federal cases and other state authority, rejecting defendants' arguments. <u>See, e.g.</u>, <u>United States v. Sierra</u>, 933 F.3d 95, 97 (2d Cir. 2019) ("Since the Supreme Court has chosen to draw the constitutional line at the age of 18 for mandatory minimum life sentences . . . the defendants' age-based Eighth Amendment challenges to their sentences must fail."); <u>United States v. Marshall</u>, 736 F.3d 492, 500 (6th Cir. 2013) (observing "an individual's eighteenth birthday marks the bright line" between juveniles and adults for Eighth Amendment purposes); <u>Commonwealth v. Lee</u>, 206 A.3d 1, 10 (Pa. Super. Ct. 2019) (rejecting the extension of "<u>Miller</u> to one who is over the age of 18 at the time of his or her offense"); <u>Haughey v. Comm'r of Corr.</u>, 164 A.3d 849, 856-57 (Conn. App. 2017) ("Eighth

23

[A]mendment jurisprudence relating to the sentencing of juvenile offenders . . . recognizes a juvenile offender as [one] who has not attained the age of eighteen.").

While their appeals were pending, all three defendants filed letters pursuant to Rule 2:6-11(d), citing Commonwealth v. Mattis, 224 N.E.3d 410, 429 (Mass. 2024), where the Massachusetts Supreme Court recently extended Miller's constitutional protections to youthful offenders up to the age of twenty. The State filed a responding letter brief in Roche's matter, asserting the issue presented in Mattis was "the constitutionality of a mandatory life-without-parole sentence for an eighteen-year-old defendant convicted of first-degree murder." See id. at 415. The State noted Roche, conversely, was not sentenced to life without parole.

During oral argument before us, Jones's appointed counsel stated the OPD has retained an expert and prepared a report with an eye toward a testimonial remand hearing. Neither Harris nor Roche has made a similar post-filing assertion; neither defendant requested oral argument before us. Based on defendants' combined arguments, however, the OPD emphasizes trial courts and this court can and should decide the issue. Defendants contend our Supreme Court in Comer did not limit constitutional protection to juvenile offenders, who

24

were prosecuted and convicted as adults. Rather, defendants argue, the Court left the issue "open."

Unpersuaded, we decline defendants' invitation to extend the holding in Comer for two reasons. Initially, we conclude the Court's decision was limited to juvenile offenders tried and convicted of murder in adult court. In our view, the Court neither explicitly nor implicitly extended this right of sentence review to offenders who between eighteen and twenty years of age when they committed their crimes.

Our conclusion finds support in a decision issued by the Court one month after Comer was decided. In State v. Ryan, 249 N.J. 581, 588 (2022), the majority[6] considered the legality of a life sentence without parole under New Jersey's "Three Strikes Law," N.J.S.A. 2C:43-7.1(a), raised in the defendant's twelfth PCR petition. The defendant argued, in part, the Miller factors applied to his "first strike" conviction, which was committed when he was sixteen years old. Id. at 590. In rejecting the defendant's appeal, the Court emphasized: "Because [the] defendant committed his third offense and received an enhanced

---

6 In the four-to-two decision, Justice Albin, joined by Justice Pierre-Louis, issued a dissent.

sentence of life without parole as an adult, . . . [his] appeal d[id] not implicate Miller or Zuber." Id. at 586-87.

The Court reasoned:

> In Zuber, we built upon . . . federal juvenile sentencing jurisprudence and extended application of the Miller factors to situations where a juvenile is facing a term of imprisonment that is the practical equivalent to life without parole. 227 N.J. at 429-30. In doing so, we acknowledged that "Miller's concerns apply broadly: to cases in which a defendant commits multiple offenses during a single criminal episode; to cases in which a defendant commits multiple offenses on different occasions; and to homicide and non-homicide cases." Id. at 448. We did not, however, extend Miller's protections to defendants sentenced for crimes committed when those defendants were over the age of eighteen.
>
> . . . .
>
> Miller and Zuber are intended to afford juveniles an opportunity for rehabilitation and ultimate release from incarceration. See Miller, 567 U.S. at 479, (finding that "children's . . . heightened capacity for change" necessarily limits the "appropriate occasions for sentencing juveniles to" life without parole); Zuber, 227 N.J. at 451 (noting that "it is difficult at an early age to differentiate between the immature offender who may reform and the juvenile who is irreparably corrupt"). Thus, Miller and Zuber are uniquely concerned with the sentencing of juvenile offenders to lifetime imprisonment or its functional equivalent without the possibility of parole.

26

[Id. at 596, 600-01 (emphasis added) (citations reformatted).]

The Court further noted: "The Legislature has chosen eighteen as the threshold age for adulthood in criminal sentencing. Although this choice may seem arbitrary, 'a line must be drawn,' and '[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood.'" Id. at 600 n.10 (2022) (first alteration in original) (quoting Roper, 543 U.S. at 574); see also Graham, 560 U.S. at 74-75; N.J.S.A. 2A:4A-22(a) (defining a juvenile as an individual "under the age of 18 years"); N.J.S.A. 2A:4A-22(b) (defining an adult as "an individual 18 years of age or older").

Moreover, our institutional role as an intermediate appellate court is a limited one. We are bound to follow the precedents of the United States Supreme Court and the Supreme Court of New Jersey, regardless of whether those precedents might seem outmoded. See, e.g., State v. Carrero, 428 N.J. Super. 495, 511 (App. Div. 2012) (declining the defendant's request that we reconsider the Supreme Court's holding on the admissibility of Alcotest results); State v. Breitweiser, 373 N.J. Super. 271, 282-83 (App. Div. 2004) (recognizing that, as an intermediate appellate court, we are bound by the Supreme Court's holdings and dicta).

Nor are we persuaded by the out-of-state authority cited by defendants. In those cases, the defendants were serving life without parole. That is not the case here. We note, however, in <u>Mattis</u>, the Massachusetts Supreme Court – not an appellate court – remanded for the trial court to conduct a hearing regarding research on brain development after the age of seventeen.

We conclude defendants' sentences were authorized by the Criminal Code and were not disturbed on direct appeal or collateral attack. They remain legal sentences. We therefore discern no reason to disturb the motion judges' decisions, which emphasized the Supreme Court in <u>Comer</u> limited its decision to juveniles.

## B.

Little need be said regarding defendants' contentions that the motion courts erroneously denied their applications for the appointment of counsel. Jones argues the motion court failed to consider his request for assignment of counsel; Harris and Roche assert the courts erroneously denied their requests. We are unconvinced.

Pursuant to <u>Rule</u> 3:21-10(c), a hearing is unnecessary unless the motion papers reveal "a hearing is required in the interest of justice." <u>R.</u> 3:21-10(c).

The same paragraph of the rule further provides the court "may" appoint counsel "upon a showing of good cause."  Ibid.

The parties have not cited, nor has our independent research revealed, any authority defining "good cause" under Rule 3:21-10(c).  In his merits brief, however, Jones cites the Report of the Supreme Court Criminal Practice Committee 2007-2009 Term (February 17, 2009).  Although not controlling, the Report sheds light on the meaning of the term, "good cause."  In recommending modification of Rule 3:21-10(c), the Committee stated:  "[T]he proposed new language of paragraph (c) will permit counsel to be assigned by the judge for difficult or possibly meritorious issues."  Id. at 9 (emphasis added).  The Committee proposed the amendment because the OPD was not required "to represent defendants who file motions to reconsider a sentence pursuant to R[ule] 3:21-10."  The rule was adopted on July 16, 2009, and became effective on September 1, 2009.

Initially, we find unavailing Jones's argument that the motion judge failed to consider his request for assignment of counsel.  By denying Jones's application without a hearing, the judge implicitly found assignment of counsel was not warranted.  Nor are we persuaded good cause existed for appointment of counsel.  As the motion courts correctly determined, defendants' sentencing

29

arguments lacked merit under <u>Comer</u>.  We further conclude their contentions were not particularly complex.

In its 2022 decision in <u>Comer</u>, the Supreme Court considered scientific articles including "adolescents and individuals in their early 20s are more likely than either children or somewhat older adults to engage in risky behaviour."  249 N.J. at 399 n.5.  One month later, the Court further noted the Legislature drew the sentencing line between childhood and adulthood at eighteen years old.  <u>Ryan</u>, 249 N.J. at 600 n.10.  Because the issues presented in defendants' pro se applications were not "difficult or possibly meritorious" in view of our Supreme Court's clear guidance, we are unconvinced there was a showing of good cause to warrant assignment of counsel.

Moreover, we decline the OPD's request, as argued on behalf of Jones, that we "set[] the standards for assignment of counsel on resentencing motions."  <u>Rule</u> 3:21-10 is clear.  The decision to appoint counsel is left to the sound discretion of the motion court.  For the foregoing reasons, we discern no abuse of discretion in these matters.

To the extent not specifically addressed, defendants' remaining contentions lack sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(2).

The orders under review are affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

31

A-3911-21